IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Colleen Therese Condon and Ann Nichols Bleckley, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2:14-4010-RMG |
| | ) | |
| v. | ) | |
| | ) | |
| Nimrata (Nikki) Randhawa Haley, in her official capacity as Governor of South Carolina; Alan Wilson, in his official capacity as Attorney General; and Irvin G. Condon, in his official capacity as Probate Judge of Charleston County, | ) ) ) ) ) ) ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs, a same sex couple seeking to marry, challenge South Carolina's statutory and

constitutional provisions prohibiting marriage between persons of the same sex. S.C. Code Ann.

§§ 20-1-10, 20-1-15; S.C. Constitution Art. XVII § 15.[1] Plaintiffs assert such provisions of

South Carolina law infringe upon their fundamental right to marry, a liberty interest protected by

the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the

United States Constitution. (Dkt. No. 1). Plaintiffs argue that the Fourth Circuit's recent

decision in *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), *cert. denied*, *Schaefer v. Bostic*, 135

S. Ct. 308 (2014), is controlling. (Dkt. No. 13). Defendants Nikki Haley and Alan Wilson, sued

---

[1] S.C. Constitution Art. XVII, § 15 provides that a "marriage between one man and one woman is the only lawful domestic union that shall be valid or recognized in this State." S.C. Code Ann. § 20-1-10(B)-(C) prohibit marriage between two men or two women and § 20-1-15 provides that "[a] marriage between persons of the same sex is void ab initio and against the public policy of the State."

in their official capacities as the Governor and Attorney General of South Carolina, assert that matters related to marital status are reserved exclusively to the states. (Dkt. No. 29 at 11-29; Dkt. No. 33-1 at 8-26).[2] These two defendants further argue that the Fourth Circuit's recent decision in *Bostic* is wrongly decided because that court improperly disregarded the controlling law of *Baker v. Nelson*, 291 Minn. 310 (1971), *summarily dismissed,* 409 U.S. 810 (1972)*,* and the Fourth Circuit's own precedent in finding that the Due Process Clause of the Fourteenth Amendment created a fundamental right of same sex couples to marry. (Dkt. No. 29 at 5-11; Dkt. No. 33-1 at 2-8; Dkt. No. 34 at 2-3). Defendant Condon, who began accepting same sex marriage applications on October 8, 2014, in compliance with *Bostic*, presently "takes no position regarding the merits of the Plaintiffs' claims for relief." (Dkt. No. 35 at 6).

Plaintiffs have now moved for summary judgment and seek declaratory and injunctive relief. (Dkt. No. 13). Defendants Haley and Wilson oppose that motion. As further set forth below, the Court finds that *Bostic* provides clear and controlling legal authority in this Circuit and that Plaintiffs are entitled to judgment as a matter of law.

## Legal Standard

A party seeking summary judgment bears the burden of showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences from those facts must be viewed in a light most favorable to the non-moving party. *Shealy v. Winston*,

---

[2] Defendants Wilson and Haley incorporated into their memorandum in opposition to Plaintiffs' motion for summary judgment (Dkt. No. 34) their briefs in support of their motion to dismiss (Dkt. No. 33-1) and in opposition to Plaintiffs' motion for a preliminary injunction. (Dkt. No. 29). Therefore, the Court has considered and cited to Defendants Haley and Wilson's other memoranda in passing upon Plaintiffs' motion for summary judgment.

929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See, Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

### Factual Background

The essential facts involved in this litigation are not contested. Plaintiffs applied for a marriage license in the office of Defendant Condon, the duly elected Probate Judge of Charleston County, on October 8, 2014, and he accepted the Plaintiffs' application and filing fee. Defendant Condon indicated at that time that he was prepared to issue Plaintiffs a marriage license upon the expiration of the mandatory 24-hour waiting period. Later that same day, Defendant Wilson, acting in his official capacity as Attorney General of South Carolina, initiated an action in the original jurisdiction of the South Carolina Supreme Court seeking an injunction prohibiting Defendant Condon from granting a marriage license to Plaintiffs until a pending federal constitutional challenge had been heard and decided. (Dkt. Nos. 13-4, 13-8, 13-10, 13-11).

In response to the Attorney General's petition, the South Carolina Supreme Court accepted the matter in its original jurisdiction for the sole purpose of entering an order enjoining any probate judge from issuing a marriage license to a same sex couple pending disposition of the legal challenge to South Carolina's same sex marriage ban in the United States District Court for the District of South Carolina. *State ex rel. Wilson v. Condon*, - - - S.E.2d - - - -, 2014 WL 5038396, at *2 (S.C. Oct. 9, 2014). Thereafter, on October 15, 2014, Plaintiffs initiated this action in the Charleston Division of the United States District Court for the District of South

Carolina.[3]

## Discussion

A.    Standing

A threshold question in every federal case is whether the plaintiff has standing to bring the action. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The plaintiff bears the burden of demonstrating a "personal stake in the outcome of the controversy" that will be sufficient to warrant the party's "invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted). This requires the plaintiff to show: (1) she is "under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the threat [is] actual and imminent, not conjectural or hypothetical"; (3) the threatened injury is "fairly traceable to the challenged action of the defendant"; and (4) it is likely that "a favorable judicial decision will prevent or redress the injury." *Id.*

The *Bostic* Court found that two of the plaintiffs, a same sex couple seeking to marry under Virginia law, had standing because the state's same sex marriage ban had prevented the couple from obtaining a marriage license. *Bostic, 760 F.3d* at 372. The Fourth Circuit found

---

[3] When the South Carolina Supreme Court issued its order in *Wilson v. Condon* on October 9, 2014, the sole pending challenge to South Carolina's statutory and constitutional provisions relating to same sex marriage involved a same sex couple that had been lawfully married in the District of Columbia and sought recognition of their marital status by the State of South Carolina. *Bradacs v. Haley*, C.A. No. 3:13-2351 (D.S.C.). This action, brought by Plaintiffs Condon and Bleckley, represents the first legal effort by a same sex couple to challenge the denial of an application for a South Carolina marriage license. The *Bradacs* case is presently pending before Judge Michelle Childs in the Columbia Division of the United States District Court for the District of South Carolina. Judge Childs recently ruled that the plaintiffs in *Bradacs*, because they were legally married in the District of Columbia, had no standing to assert a challenge to South Carolina's ban on same sex marriage. *Bradacs v. Haley*, C.A. No. 3:13-2351, Dkt. No. 89 at 13 n.7 (D.S.C. November 10, 2014).

-4-

that "this license denial constitutes an injury" to these plaintiffs sufficient to provide them standing. *Id.*

In light of the uncontested facts set forth above, it is clear that Plaintiffs have the type and degree of injury to have standing to assert their claims. Plaintiffs' application for a marriage license, and the denial of that license under South Carolina's laws prohibiting same sex marriage, make their injury "concrete" and "actual" and that injury is "fairly traceable to the challenged action." *Id.* Further, Plaintiffs' injuries are fairly traceable to the action and/or inaction of Defendants Wilson and Condon, as explained below, and a favorable judicial decision could redress Plaintiffs' injuries.

B.    Eleventh Amendment Immunity

Defendants Haley and Wilson have further argued that an action against them is barred by the Eleventh Amendment. (Dkt. No. 29 at 29-32). It is well settled that the Eleventh Amendment does not bar suits against officers of the state where a plaintiff has (1) sued a state officer for ongoing violations of federal law; (2) seeks only injunctive and declaratory relief; and (3) the state officer is "clothed with some duty in regard to the enforcement of the laws of the state and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." *Ex parte Young*, 209 U.S. 123, 155-156 (1908).

No party challenges the naming of Defendant Condon as a proper party defendant to this action. As the duly elected probate judge of Charleston County, Defendant Condon is vested with the authority to take applications for and to issue marriage licenses to eligible couples. S.C. Code Ann. §§ 20-1-220, 20-1-260, 20-1-270. Further, it is uncontested that Plaintiffs applied to

-5-

Defendant Condon for a marriage license and that the state statutory and constitutional provisions under challenge in this action barred the issuance of the license.

The *Bostic* Court specifically addressed this issue in regard to the clerk of the circuit court for the city of Norfolk who had the responsibility under Virginia law to issue and record marriage licenses. *Bostic v. Schaefer*, 760 F.3d at 371. The Fourth Circuit concluded that the Eleventh Amendment did not bar an action against the defendant clerk of court because he "bears the requisite connection to the enforcement of the Virginia Marriage Laws due to his role in granting and denying applications for marriage licenses." *Id.* at n.3. Similarly, Defendant Condon's role under the South Carolina statutory scheme for the issuance of marriage licenses makes him an appropriate defendant in this constitutional challenge, and the action against him is not barred by the Eleventh Amendment.

Defendant Wilson and Haley argue that they are not appropriate defendants because the Eleventh Amendment bars claims against them. They are correct that there must be a meaningful nexus between the named defendant and the asserted injury of the plaintiff. By itself, a generalized duty of a named defendant to uphold the laws is not sufficient. *E.g. McBurney v. Cuccinelli*, 616 F.3d 393, 401 (4th Cir. 2010).

Defendant Wilson has a duty as the state's chief prosecutor and attorney to enforce the laws of the state. He has recently initiated litigation in the original jurisdiction of the South Carolina Supreme Court in regard to the same sex marriage laws under challenge, specifically seeking to enjoin Judge Condon from issuing marriage licenses to Plaintiffs and other same sex couples. *See Wilson v. Condon*, 2014 WL 5038396. He has also indicated an intention in filings in this Court to vigorously enforce the state law provisions at issue in this litigation and to

-6-

challenge efforts by Plaintiffs to vindicate their claimed fundamental right to marry under the United States Constitution. Thus, like the Attorney General in *Ex parte Young*, Defendant Wilson is "clothed with some duty in regard to the enforcement of the laws of the state" and has in fact threatened and commenced actions "to enforce against parties" provisions of state law allegedly violating the Federal Constitution. 129 U.S. at 155-56. As such, Defendant Wilson is a proper defendant in this action, and the claims against him are not barred by the Eleventh Amendment.[4] *See id.*; *Kitchen v. Herbert*, 755 F.3d 1193, 1201-1203 (10th Cir. 2014); *cf. McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010) (holding *Ex parte Young* exception did not apply because the state Attorney General "ha[d] not enforced, threatened to enforce, or advised other agencies to enforce" the statutory provision at issue).

Plaintiffs' claims against Defendant Haley are not nearly so straightforward. It is clear that simply being the state's chief executive sworn to uphold the laws is not sufficient to invoke *Ex parte Young*. The Court has before it little evidence to support an argument that Defendant Haley has taken enforcement action or engaged in other affirmative acts to obstruct Plaintiffs' asserted fundamental right to marry. *Cf. Bowling v. Pence*, 2014 WL 4104814 at \*3-4 (S.D. Ind. Aug. 19, 2014) (reversing a prior order dismissing the Governor of Indiana as a defendant after he took "affirmative action to enforce the statute"). Therefore, the Court finds that Plaintiffs' claims against Defendant Haley are barred by the Eleventh Amendment, and she is, therefore,

---

[4] Judge Childs reached the same conclusion in the *Bradacs* case. No. 3:13-2351, Dkt. No. 89 at 20 ("Defendant Wilson cannot take such action to specifically enforce the laws at issue and then hope to invoke Eleventh Amendment immunity under a theory that he simply has only 'general authority.'").

dismissed as a defendant in this action.[5]

C.    *Rooker-Feldman* Doctrine

Defendant Wilson argues that Plaintiffs' constitutional challenge to South Carolina's ban on same sex marriage is barred by the *Rooker-Feldman* doctrine because the South Carolina Supreme Court recently granted a stay in *Wilson v. Condon*, 2014 WL 5038396. (Dkt. No. 29 at 3-5). Defendant misapprehends the nature and scope of this doctrine. The *Rooker-Feldman* doctrine provides that a losing party in a state court proceeding may not file an action in federal district court to review and reject a state court judgment. *Lance v. Dennis*, 546 U.S. 459, 464 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). *Rooker-Feldman* is a "narrow" doctrine and "applies only when a federal court is asked to review the *final* decisions of a state court." *Morkel v. Davis*, 513 F. App'x 724, 727 (10th Cir. 2013) (emphasis in original); *Exxon Mobil,* 544 U.S. at 292 ("This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.") (internal quotations omitted); *David Vincent, Inc. v. Broward Cty., Fla.*, 200 F.3d 1325, 1332 (11th Cir. 2000) (holding *Rooker-Feldman* doctrine did not apply because the state court's "denial of the temporary injunction is not a final or conclusive judgment on the merits").

The state court proceeding relied on by Defendant Wilson was an action brought by him, in his capacity as Attorney General of South Carolina, in the original jurisdiction of the South Carolina Supreme Court against Defendant Condon, the probate judge of Charleston County,

---

[5] Again, Judge Childs reached the same conclusion. *Bradacs*, No. 3:13-2351, Dkt. No. 89 at 18.

after Condon announced his intention to issue marriage licences in adherence to the Fourth

Circuit's decision in *Bostic*. At the time, the only case pending in United States District Court

for the District of South Carolina relating to the State's refusal to recognize same sex marriage

was *Bradacs v. Haley*, C.A. No. 3:13-2351, an action by a same sex couple married in the

District of Columbia who sought to have their marriage recognized under South Carolina law.

The South Carolina Supreme Court accepted the *Wilson v. Condon* case in its original

jurisdiction and stayed any issuance of marriage licenses to same sex couples by South Carolina

Probate Judges pending the disposition of the constitutional questions in federal district court

"for the limited purpose of maintaining the status quo until the Federal District Court can resolve

the case pending before it." *Wilson v. Condon*, 2014 WL 5038396, at *2.

Subsequent to the South Carolina Supreme Court's grant of the stay in *Wilson*, Plaintiffs

initiated this action in the Charleston Division of the United States District Court challenging

state statutes and constitutional provisions prohibiting same sex marriage and seeking the

issuance of a marriage license. The stay granted by the South Carolina Supreme Court is hardly a

final judgment on the merits but simply an understandable effort by the South Carolina Supreme

Court to maintain the status quo while the federal district courts addressed the constitutionality of

the State's same sex marriage ban. The South Carolina Supreme Court clearly intended the

federal court to rule on the constitutionality of the same sex marriage ban and for the *state courts*

to abstain from doing so, as it ordered that "unless otherwise ordered by this Court, the issue of

the constitutionality of the foregoing state law provisions shall not be considered by any court in

the South Carolina Unified Judicial System while that issue remains pending before the Federal

District Court." 2014 WL 5038396, at *2. The South Carolina Supreme Court's grant of a stay

to temporarily maintain the status quo did not (and could not) interfere with or impair the

Plaintiffs' right to seek protection of what they assert is a fundamental right to marry in the

United States District Court or this Court's ability to exercise its jurisdiction and to provide

Plaintiffs, if vindicated, appropriate declaratory and injunctive relief.[6]

D.     Absentia Doctrines

Defendant Wilson argues that this Court should abstain under *Younger*. However, the

*Younger* doctrine only applies in three "exceptional" circumstances: interference with state

criminal prosecutions, interference with civil enforcement proceeds akin to criminal

prosecutions, and interference with "civil proceedings involving certain orders that are uniquely

in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'n,

Inc. v. Jacobs*, 134 S. Ct. 588, 587, (2013) (holding these three categories "define *Younger*'s

scope"). However, Defendants have not argued that this case presents any of these exceptional

circumstances. "Because this case presents none of the circumstances the [Supreme] Court has

ranked as 'exceptional,' the general rule governs: The pendency of an action in a state court is no

bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at

588 (internal quotations omitted).

---

[6] Defendants Wilson and Haley also argue that this Court should decline to consider this
case until a decision is reached in *Bradacs* under the first-to-file rule. (Dkt. No. 29 at 35-37).
However, Defendants acknowledge that "[t]he most basic aspect of the first to file rule is that it is
discretionary," and that "[t]he decision and the discretion belong to the district court." *Id.* at 36
(quoting *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999). Further,
Judge Childs has already ruled that the issue central to this action, Plaintiffs' right to marry as a
same sex couple, is not before her because the plaintiffs in *Bradacs* have no standing to assert the
claim because they are already legally married. Given the differing factual scenarios at issue in
*Bradacs* and the case *sub judice* as well as the fundamental nature of the right at issue, the Court
declines to wait until a judgment is entered in *Bradacs* to address Plaintiffs' claims.

Defendant Wilson also argues that this Court should decline to consider this case until a decision is reached in *Bradacs* under the first-to-file rule. (Dkt. No. 29 at 35-37). However, Defendants acknowledge that "the most basic aspect of the first to file rule is that it is discretionary," and that "[t]he decision and the discretion belong to the district court." (*Id.* at 36 (quoting *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999)). Further, Judge Childs has already ruled that the issue central to this action–Plaintiffs' right to marry as a same sex couple–is not before her because the plaintiffs in *Bradacs* are already married and, thus, do not have standing to assert the claim. Given the differing factual scenarios at issue in *Bradacs* and the case *sub judice* as well as the fundamental nature of the right at issue, the Court declines to wait until a judgment is entered in *Bradacs* to address Plaintiffs' claims.

D.     Merits of the Constitutional Claims

In addressing Plaintiffs' constitutional claim to a fundamental right to marry, this Court does not write on a blank canvas. In *United States v. Windsor*, 133 S. Ct. 2675 (2013), the United States Supreme Court struck certain provisions of the Defense of Marriage Act ("DOMA"). Those provisions denied the surviving spouse of a state-sanctioned same sex marriage under New York law the benefits of a federal estate tax deduction available to surviving spouses of opposite sex marriages. Writing for the majority, Justice Kennedy stated that DOMA "writes inequality into the entire United States Code" by identifying "a subset of state-sanctioned marriages" and making "them unequal." *Id.* at 2694. The Court reasoned that by denying certain federal benefits to members of same sex marriages, DOMA imposed "a disability on the class" that violated their "personhood and dignity" in violation of their liberty interest protected by the Due Process Clause of the Fifth Amendment of the United States Constitution. *Id.* at 2695-96.

-11-

Although the *Windsor* holding dealt only with the validity of certain provisions of federal statutory law, Justice Scalia, writing in dissent, correctly predicted that an assault on state same sex marriage bans would follow *Windsor*. *Id.* at 2710.

In the approximately 17 months since the *Windsor* decision, federal courts in virtually every circuit and in every state with a same sex marriage ban have heard lawsuits challenging the constitutionality of such state law provisions. These suits commonly involve challenges by same sex couples seeking marriage licenses and/or same sex couples validly married in another state attempting to obtain home state recognition of their marital status. Four Federal Courts of Appeal have held that state law bans on same sex marriage violate the constitutional rights of same sex couples: the Seventh, Ninth, Tenth and, most importantly for our purposes, the Fourth Circuit. Further, the United States Supreme Court, on October 6, 2014, declined to grant review of the decisions of the Fourth, Seventh and Tenth Circuits, leaving their judgments in place. *See Latta v. Otter*, - - - F.3d - - - -, 2014 WL 4977682 (9th Cir. Oct. 7, 2014); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014), *cert. denied,* 2014 WL 4425162 (Oct. 6, 2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), *cert. denied, Schaefer v. Bostic*, 135 S. Ct. 308 (2014); *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. July 18, 2014), *cert. denied,* 2014 WL 3854318 (Oct. 6, 2014); *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), *cert. denied,* 2014 WL 3841263 (Oct. 6, 2014). One appellate court, the Sixth Circuit, recently held there is no constitutional right to same sex marriage, overturning lower court decisions in Kentucky, Michigan, Ohio and Tennessee.[7] Additionally, a clear majority of federal district courts that have addressed this issue

---

[7] *DeBoer v. Snydner*, - - - F.3d - - - -, 2014 WL 5748990 (6th Cir. Nov. 6, 2014), overturning lower court decisions in *Love v. Beshear,* 989 F. Supp. 2d 536 (W.D. Ky. 2014); *Henry v. Himes,* - - - F. Supp. 2d - - - -, 2014 WL 1418395 (S.D. Ohio Apr. 14, 2014); *DeBoer v.*

have found state same sex marriage bans unconstitutional.[8]

Plaintiffs accurately note that four out of five appellate court decisions and the overwhelming majority of the district court decisions favor their position. On the other hand, Defendants, while acknowledging the body of recent case law going mostly against them, argue that at least one appellate court and a few district courts have adopted their arguments and the United States Supreme Court has yet to squarely address the issue. While this debate over precedent and constitutional principle is interesting, this Court finds most persuasive the clearly stated authority of the Fourth Circuit's seminal decision in *Bostic*. It is axiomatic that a decision of a circuit court, not overruled by the United States Supreme Court, is controlling precedent for

---

*Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014); *Lee v. Orr*, No. 13-cv-8719, 2014 WL 684680 (N.D. Ill. Feb. 21, 2014); *Bourke v. Beshear*, 996 F. Supp. 2d 542 (W.D. Ky. 2014); *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013).

[8] *See Lawson v. Kelly,* No. 14-cv-0622 (W.D. Mo. Nov. 7, 2014); *Marie v. Moser,* No. 14-cv-2518, 2014 WL 5598128 (D. Kan. Nov. 4, 2014); *Connolly v. Jeanes,* No. 2:14-cv-00024, 2014 WL 5320642 (D. Ariz. Oct. 17, 2014); *Majors v. Horne,* - - - F. Supp. 3d - - - -, 2014 WL 5286743 (D. Ariz. Oct. 16, 2014); *Fisher-Borne v. Smith,* - - - F. Supp. 3d - - - -, 2014 WL 5138914 (M.D.N.C. Oct. 14, 2014); *Hamby v. Parnell,* - - - F. Supp. 3d - - - -, 2014 WL 5089399 (D. Alaska Oct. 12, 2014); *Gen. Synod of the United Church of Christ v. Resinger,* 12 F. Supp. 3d 790 (W.D.N.C. 2014); *Brenner v. Scott,* 999 F. Supp. 2d 1278 (N.D. Fla. 2014); *Bowling v. Pence,* - - - F. Supp. 2d - - - -, 2014 WL 4104814 (S.D. Ind. Aug. 19, 2014); *Burns v. Hickenlooper,* No. 14-cv-1817, 2014 WL 3634834 (D. Colo. July 23, 2014) (preliminary injunction), *made permanent by* 2014 WL 5312541 (D. Colo. Oct. 17, 2014); *Baskin v. Bogan*, 12 F. Supp. 3d 1144 (S.D. Ind. 2014), *aff'd,* 766 F.3d 649 (7th Cir. 2014); *Wolf v. Walker*, 986 F. Supp. 2d 982 (W.D. Wis. 2014), *aff'd,* 766 F.3d 648 (7th Cir. 2014); *Whitewood v. Wolf,* 992 F. Supp. 2d 410 (M.D. Pa. May 20, 2014); *Geiger v. Kitzhaber,* 994 F. Supp. 2d 1128 (D. Or. May 19, 2014); *Latta v. Otter,* - - - F. Supp. 2d - - - -, 2014 WL 1909999 (D. Idaho May 13, 2014), *aff'd,* 2014 WL 4977682 (9th Cir. 2014); *Bostic v. Rainey,* 970 F. Supp. 2d 456 (E.D. Va. 2014), *aff'd* 760 F.3d 352 (4th Cir. 2014); *Bishop v. U.S. ex rel. Holder,* 962 F. Supp. 2d 1252 (N.D. Okla. 2014), *aff'd,* 760 F.3d 1070 (10th Cir. 2014); *Kitchen v. Herbert,* 961 F. Supp. 2d 1181 (D. Utah 2013), *aff'd,* 755 F.3d 1193 (10th Cir. 2014). *But see Conde-Vidal v. Garcia-Padilla,* - - - F. Supp. 3d - - - -, 2014 WL 5361987 (D.P.R. Oct. 21, 2014); *Robicheaux v. Caldwell,* 2 F. Supp. 3d 910 (E.D. La. 2014).

the district courts within the circuit. *E.g., United States v. Brown*, 74 F. Supp. 2d 648, 652 (N.D.W.Va. 1998).

The *Bostic* plaintiffs included a same sex couple who had unsuccessfully sought a marriage license under Virginia law. The Virginia same sex marriage ban prohibited "marriage between persons of the same sex." Va. Code Ann. § 20-45.2. Judge Henry Floyd, writing for the *Bostic* majority, noted that the Virginia statute was "similar" to the ban imposed under South Carolina law found in S.C. Constitution Art. XVII, § 15 and S.C. Code Ann. §§ 20-1-10 and 20-1-15. *Bostic*, 760 F.3d at 368 n.1. The issues before the *Bostic* court were exhaustively briefed by the parties as well as by numerous amicus briefs, including an amicus brief joined by the State of South Carolina and submitted by Defendant Wilson. (Dkt. No. 13-12).

As a preliminary matter, the *Bostic* Court addressed Virginia's argument that the United States Supreme Court's summary dismissal of a 1971 Minnesota Supreme Court decision upholding the state's same sex marriage ban in *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), *summarily dismissed* for "want of a substantial federal question," 409 U.S. 810 (1972), was controlling. The *Bostic* Court rejected that argument, concluding that "doctrinal developments"[9]

---

[9] Defendant Wilson argues that Fourth Circuit decisions do not "recognize that a Circuit Court or a District Court is at liberty to decide that a summary decision by the Supreme Court has been abandoned or superseded by 'doctrinal developments.'" (Dkt. No. 29 at 7). However, the United States Supreme Court recognized this very point in *Hicks*. *Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (holding that where the Supreme Court "has branded a question as unsubstantial, it remains so *except when doctrinal developments indicate otherwise*") (internal quotations omitted) (emphasis added).

in the more than forty years since *Baker* undermined any remaining force of the Supreme Court's summary dismissal in *Baker*.[10]  760 F.3d at 373.

The *Bostic* Court next turned its attention to the substantive claims of Plaintiffs, concluding that they had a "fundamental right" to marry, which is protected by the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. *Id.* at 375-78.  In reaching that conclusion, the *Bostic* Court traced the Supreme Court's recognition of the "expansive liberty interest" in the "right to marry." *Id.* at 376.  The Court discussed Supreme Court decisions invalidating Virginia's interracial marriage ban in *Loving v. Virginia*, 388 U.S. 1 (1967), striking a Wisconsin statute that required a person with child support obligations to obtain a court order to marry in *Zablocki v. Redhail*, 434 U.S. 375, 383-84 (1978), and overturning a Missouri statute that prohibited prisoners from marrying in *Turner v. Safley*, 482 U.S. 78, 94-97 (1987).  The Fourth Circuit held that these authorities established a liberty interest in "a broad right to marry" and that the previous Supreme Court decisions in *Windsor* and *Lawrence v. Texas*, 539 U.S. 558 (2003), "firmly position same-sex relationships within the ambit of the Due Process Clauses' protection." 760 F.3d at 374.

Since the *Bostic* Plaintiffs had a fundamental right to marry, the Fourth Circuit held that Virginia's effort to bar their marriage was subject to strict scrutiny under both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment and, as such, could be justified only by a compelling state interest. *Id.* at 375-77.  *Bostic* then examined Virginia's

---

[10] Such doctrinal developments include equal protection decisions that hold sex-based classifications are quasi-suspect and warrant intermediate scrutiny and the Supreme Court's decisions in *Windsor* and *Lawrence v. Texas*, 539 U.S. 558 (2003), which recognize that same sex couples have a constitutional right to make their own "moral and sexual choices." *Bostic*, 760 F.3d at 374.

various asserted state interests in maintaining its same sex marriage ban[11] and found that none

constituted a compelling state interest. *Id.* at 377-384.

Defendant Wilson argues that the "domestic relations exception" deprives federal courts

of jurisdiction over this case, and this Court is mandated to abstain from addressing Plaintiff's

federal constitutional right to marry their same sex partner. (Dkt. No. 33-1 at 5-8). Contrary to

Defendant Wilson's contention, the *Bostic* Court did address the state asserted right to control

marital relations. The Fourth Circuit carefully analyzed the competing constitutional principles

of state control of marital relations and the federal protection under the Fourteenth Amendment

of the fundamental right of liberty, including the "intensely personal choice" of "whom to

marry." *Id.* at 378-80. Citing to *Loving* and *Windsor*, the *Bostic* Court concluded that states

must exercise their authority over marital relations "without trampling constitutional guarantees"

of same sex couples and rejected Virginia's claim that principles of federalism required a

different outcome. *Id.* at 378-80. It held that while states have the authority to regulate domestic

relations and marriage, "[s]tate laws defining and regulating marriage, of course, must respect the

constitutional rights of persons." *Id.* at 379 (quoting *Windsor*, 133 S. Ct. at 2691).[12]

---

[11] These interests included the State's interest in maintaining control over the definition of marriage, the history and tradition of opposite sex marriage, protection of the institution of marriage, encouragement of responsible procreation, and promotion of the optimal child rearing environment. *Bostic*, 760 F. 3d at 378.

[12] Defendant Wilson's reliance on *Elk Grove v. United Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) is misplaced, as *Newdow*'s prudential standing analysis was explicitly abrogated in *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014). In *Lexmark*, the Supreme Court held that "[j]ust as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, . . . it cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Id.* at 1388.

Defendant Wilson also points to the recent Sixth Circuit decision in *DeBoer* for the

proposition that federalism and respect for state and voter prerogatives should trump Plaintiffs'

liberty claims under the Fourteenth Amendment. (Dkt. No. 34). *DeBoer* concluded that same

sex couples should not look to the courts to protect their individual rights but to the "usually

reliable state democratic processes" for relief. 2014 WL 5748990, at *1. The *Bostic* Court

rejected that argument, observing that the "very purpose of the Bill of Rights[13] was to withdraw

certain subjects from the vicissitudes of political controversy, to place them beyond the reach of

majorities and officials and to establish them as legal principles to be applied by the courts.

One's right to life, liberty, and property, to free speech, a free press, freedom of worship and

assembly, and other fundamental rights may not be submitted to a vote; they depend on the

outcome of no elections." *Bostic*, 760 F.3d at 379 (quoting *W. Va. State Bd. of Educ. v. Barnette*,

319 U.S. 624, 638 (1943)) (footnote in original).

After discussing all of these arguments, the *Bostic* Court concluded:

> We recognize that same-sex marriage makes some people deeply
> uncomfortable. However, inertia and apprehension are not
> legitimate bases for denying same-sex couples due process and
> equal protection of the laws. Civil marriage is one of the
> cornerstones of our way of life. It allows individuals to celebrate
> and publicly declare their intentions to form lifelong partnerships,
> which provide unparalleled intimacy, companionship, emotional
> support and security. The choice of whether and whom to marry
> is an intensely personal decision that alters the course of an
> individual's life. Denying same-sex couples this choice prohibits
> them from participating fully in our society, which is precisely

---

[13] The Fourteenth Amendment is not part of the Bill of Rights, but the excerpt from
*Barnette* is relevant here due to the Fourteenth Amendment's similar goal of protecting
unpopular minorities from government overreaching, *see Regents of Univ. of Cal. v. Bakke*, 438
U.S. 265, 293 (1978), and its role in rendering the Bill of Rights applicable to the states, *see*
*Duncan v. Louisiana*, 391 U.S. 145, 147–48, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

> the type of segregation that the Fourteenth Amendment cannot
> countenance.

*Id.* at 384.

The defendants in *Bostic*, as well as the unsuccessful defendants in the Seventh and Tenth

Circuit decisions, sought certiorari in the United States Supreme Court.  The parties seeking

certiorari asserted essentially every argument advanced below and in this action, including the

contention that *Baker v. Nelson* constituted controlling authority and was inconsistent with the

appellate court decisions finding a fundamental right of same sex couples  to marry.  2014 WL

4351585 (*Bostic* petition for certiorari); 2014 WL 4418688 (*Bogan* petition for certiorari); 2014

WL 3867714 (*Bishop* petition for certiorari); 2014 WL 3867706 (*Kitchen* petition for certiorari).

On October 6, 2014, the United States Supreme Court declined to review the Fourth Circuit's

decision in *Bostic*, as well as the decisions in the Seventh and Tenth Circuits, and the stay that

had been granted the state of Virginia pending appeal was promptly lifted.  2014 WL 4230092

(U.S. Oct. 6, 2014); 2014 WL 4960335 (4th Cir. Oct. 6, 2014).

Within days of the Supreme Court's denial of certiorari in *Bostic*, Judge Max Cogburn of

the Western District of North Carolina issued a terse two-page order declaring North Carolina's

same sex marriage ban "unconstitutional as a matter of law."  *General Synod of the United*

*Church of Christ v. Resinger*, - - - F. Supp. 3d - - - -, 2014 WL 5092288 (W.D.N.C. Oct. 10,

2014).  Judge Cogburn observed that the issue before him was "neither a political issue nor a

moral issue" but simply a "*legal* issue" on what is "now settled law in the Fourth Circuit."  *Id.* at

*1 (emphasis in original).  He then issued a permanent injunction against enforcement of all

-18-

applicable state statutory and constitutional provisions relating to the North Carolina ban on same sex marriage. *Id.*

A few days later, Judge William Osteen of the Middle District of North Carolina also issued an order declaring the North Carolina same sex marriage ban unconstitutional in light of *Bostic. Fisher-Borne v. Smith*, - - - F. Supp. 3d - - - -, 2014 WL 5138914 (M.D.N.C. Oct. 14, 2014). Judge Osteen observed that a "decision by a circuit court is binding on this court" and that he could not discern any meaningful difference between the North Carolina same sex marriage ban statute and the Virginia statute declared unconstitutional in *Bostic. Id.* at *2.

Soon after the Supreme Court's denial of certiorari in *Bostic*, West Virginia state officials announced they would no longer enforce the state's same sex marriage ban in light of the Fourth Circuit's decision. Maryland, by legislation, had authorized same sex marriage in 2013. Thus, at the time Plaintiffs filed this action, South Carolina was the only state within the Fourth Circuit that continued to prohibit same sex marriage.

This Court has carefully reviewed the language of South Carolina's constitutional and statutory ban on same sex marriage and now finds that there is no meaningful distinction between the existing South Carolina provisions and those of Virginia declared unconstitutional in *Bostic*. The South Carolina statutory ban on same sex marriage provides that "marriage between persons of the same sex is void ab initio and against the public policy of the State" and explicitly bans marriage between two men and two women. S.C. Code Ann. §§ 20-1-10, 20-1-15. The Virginia statute declared unconstitutional in *Bostic* stated that "[a] marriage between persons of the same sex is prohibited." Va. Code Ann. § 20-45.2. The South Carolina constitutional provision under challenge states that "[a] marriage between one man and one woman is the only lawful domestic

-19-

union that shall be valid or recognized in this State," and the Virginia constitutional provision declared unconstitutional in *Bostic* stated that "only a union between one man and one woman may be a marriage valid in or recognized by this Commonwealth and its political subdivisions." S.C. Constitution Art. XVII, § 15; Va. Constitution Art. I, § 15-A.

Defendant Wilson argues that this Court should not follow *Bostic* because the Fourth Circuit disregarded its own precedents and should have considered the United States Supreme Court's 1972 decision in *Baker v. Nelson* (finding that same sex marriage did not present a substantial federal question) binding despite the more recent Supreme Court language from *Windsor* (finding that a federal law failing to recognize same sex marriages violated the Fifth Amendment and failing to cite *Baker*). (Dkt. No. 29 at 5-11). While a party is certainly free to argue against precedent, even very recent precedent, the Fourth Circuit has exhaustively addressed the issues raised by Defendants and firmly and unambiguously recognized a fundamental right of same sex couples to marry and the power of the federal courts to address and vindicate that right. *Bostic*, 760 F.3d at 377-84. Regardless of the passion of *Bostic*'s opponents, the predictability and stability of our judicial decisionmaking is dependent upon lower courts respecting and enforcing the decisions of higher appellate courts. Not every decision is heard and decided by the United States Supreme Court (in fact very few are), and lower federal courts are not free to disregard clear holdings of the circuit courts of appeal simply because a party believes them poorly reasoned or inappropriately inattentive to alternative legal arguments. Coherent and consistent adjudication requires respect for the principle of stare decisis and the basic rule that the decision of a federal circuit court of appeals left undisturbed by United States Supreme Court review is controlling on the lower courts within the circuit. This

-20-

principle, along with the foundational rule that the United States Constitution is the supreme law of the land and state laws that run contrary to constitutionally protected rights of individuals cannot be allowed to stand, are among the body of doctrines that make up what we commonly refer to as the rule of law.

The Court finds that *Bostic* controls the disposition of the issues before this Court and establishes, without question, the right of Plaintiffs to marry as same sex partners. The arguments of Defendant Wilson simply attempt to relitigate matters already addressed and resolved in *Bostic.* Any effort by Defendant Wilson or others to overrule *Bostic* should be addressed to the Fourth Circuit and/or the United States Supreme Court.

Based upon the foregoing, the Court hereby declares that S.C. Code Ann. § 20-1-10(B)-(C), S.C. Code Ann. § 20-1-15 and S.C. Constitution Art XVII, § 15, to the extent they seek to prohibit the marriage of same sex couples who otherwise meet all other legal requirements for marriage in South Carolina, unconstitutionally infringe on the rights of Plaintiffs under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and are invalid as a matter of law. In order to protect and vindicate Plaintiffs' rights under the United States Constitution, this Court hereby issues the following permanent injunction and enjoins Defendant Wilson and Condon, their officers, agents, servants and employees, from:

1.    Enforcing S.C. Constitution Art. XVII, § 15, S.C. Code Ann. §§20-1-10 and 20-1-15 or any other state law or policy to the extent they seek to prohibit the marriage of same sex couples;

2.    Interfering in any manner with Plaintiffs' fundamental right to marry or in the issuance of a marriage license to Plaintiffs; and/or

    3.      Refusing to issue to Plaintiffs a marriage license if, but for their sex, they are

otherwise qualified to marry under the laws of South Carolina.

E.    <u>Request for Stay</u>

      Defendant Wilson urges this Court, in the event it grants Plaintiffs' motion for summary

judgment and request for permanent injunctive relief, to stay the effect of its order pending

appeal or, in the alternative, to grant a temporary stay pending the Fourth Circuit's review of a

request for an appeal stay. (Dkt. No. 36). A stay "is not a matter of right" and the party seeking

a stay bears the burden of demonstrating the presence of the exacting standards for the granting

of such relief. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). The standards for granting a stay

closely resemble the standards for the grant of a preliminary injunction, including (1) "a strong

showing" that the party requesting the stay will succeed on the merits; (2) the presence of

irreparable injury by the party seeking the stay; (3) whether the stay will substantially injure other

parties to the litigation;  and (4) whether the public interest is served by the grant of the stay. *Id.*

at 434.

      In light of the Court's analysis set forth above and its conclusion that *Bostic* is controlling

authority, it is quite evident that Defendant Wilson cannot carry his burden of showing a

likelihood of success on the merits. Further, the Defendant Wilson has not set forth any

meaningful evidence of irreparable injury should the petition for a stay be denied. On the other

hand, Plaintiffs, who seek to exercise their fundamental right to marry, have put forward

evidence of irreparable injury should a stay be granted. It is well settled that any deprivation of

constitutional rights "for even minimal periods of time" constitutes irreparable injury. *Elrod v.*

*Burns*, 427 U.S. 347, 373 (1976); 11A Charles Alan Wright, Federal Practice & Procedure

-22-

§ 2948.1 (3d ed. 2014) ("Where there is an alleged deprivation of constitutional right[s] . . . most courts hold no further showing of irreparable injury is necessary."). Moreover, same sex marriage bans have been found to impose on same sex couples "profound legal, financial, social and psychic harms" that are "considerable." *Latta*, - - - F.3d - - - -, 2014 WL 4977682, at *11; *Baskin v. Bogan*, 766 F.3d at 658. Finally, the public interest is best served by the denial of a stay that would allow the continued enforcement of a state law found to be unconstitutional.

Having denied Defendant Wilson's motion to stay this Court's injunction pending appeal, the Court must consider whether a temporary stay is appropriate to allow the Fourth Circuit an opportunity to consider the Defendant's petition to stay pending appeal in an orderly and reasonable fashion. This factual scenario is similar to the situation presented to the district court in *Marie v. Moser*, No. 2:14-2518, 2014 WL 5800151 (D. Kan. Nov. 4, 2014). The Tenth Circuit, of which the District of Kansas is a part, had previously ruled that same sex bans in Oklahoma and Utah were unconstitutional in *Bishop v. Smith* and *Kitchen v. Herbert*, and the United States Supreme Court had denied review in both cases. The district court in *Marie* observed that while it was unwilling to issue a stay pending appeal because the defendant could not meet the legal standard for the grant of an appeal stay, the issue of a temporary stay of one week (until November 11, 2014) to allow the Tenth Circuit to consider the defendant's request was the "safer and wiser course." *Id.* at 37-38. The Tenth Circuit denied the request for a stay on November 7, 2014, and the defendant then petitioned the United States Supreme Court for a stay. On November 10, 2014, Justice Sotomayor stayed the district court's order in *Marie* pending a response from the plaintiffs and further order of the Court. *Moser v. Marie*, - - - S. Ct. - - - -, 2014 WL 5816952 (Nov. 10, 2014).

-23-

This Court finds that a brief one-week stay in the enforcement of this Court's injunction is appropriate to allow the Fourth Circuit to receive Defendant's Wilson's petition for an appeal stay and to consider that request in an orderly fashion. This may also allow the pending request for an appeal stay in *Marie* to be addressed by Justice Sotomayor or the full United States Supreme Court.[14] Therefore, the Court grants a temporary stay of the Court's injunction in this matter until November 20, 2014, at 12:00 noon.[15]

### Conclusion

Therefore, Plaintiffs' motion for summary judgment (Dkt. No. 13) is **GRANTED.** This Court hereby issues the following permanent injunction and enjoins Defendant Wilson and Condon, their officers, agents, servants and employees, from:

1.    Enforcing S.C. Constitution Art. XVII, § 15, S.C. Code Ann. §§20-1-10 and 20-1-15 or any other state law or policy to the extent they seek to prohibit the marriage of same sex couples;

2.    Interfering in any manner with Plaintiffs' fundamental right to marry or in the issuance of a marriage license to Plaintiffs; and/or

---

[14] On October 8, 2014, Justice Kennedy issued a temporary stay of the Ninth Circuit order in *Latta v. Otter*, which declared the Idaho same sex ban unconstitutional. Two days later, on October 10, 2014, the full Court denied the stay, and the previously issued temporary stay by Justice Kennedy was vacated. 135 S.Ct. 345 (2014).

[15] The Court is mindful that the strict application of the four part test for the granting of a stay would result in the denial of even this one-week temporary stay. However, sometimes the rigid application of legal doctrines must give way to practicalities that promote the interest of justice. Providing this Court's colleagues on the Fourth Circuit a reasonable opportunity to receive and consider Defendant Wilson's anticipated petition for an appeal stay justifies this brief stay of the Court's injunctive relief in this matter.

3.    Refusing to issue to Plaintiffs a marriage license if, but for their sex, they are

otherwise qualified to marry under the laws of South Carolina.[16]

Defendant Wilson's motion for a stay (Dkt. No. 36) is **GRANTED IN PART AND**

**DENIED IN PART**.  Defendant Wilson's motion for an appeal stay is **DENIED.**  Defendant

Wilson's motion for a temporary stay is **GRANTED** until November 20, 2014, at 12:00 noon.

Plaintiffs' motion for a preliminary injunction (Dkt. No. 12) and Defendants' motion to dismiss

(Dkt. No. 33) are **DENIED** as moot.  Defendant Haley is dismissed as a party pursuant to the

Eleventh Amendment.  Any motion by Plaintiffs for an award of attorney fees pursuant to 42

U.S.C. § 1988 will be considered upon appropriate motions of the parties.

---

[16] Counsel for Defendant Condon has raised with the Court a potential dilemma Defendant Condon might confront if this Court granted Plaintiffs injunctive relief effectively requiring him to issue to them a marriage license and the South Carolina Supreme Court failed to dissolve the stay in *Wilson v. Condon* (as it has pledged to do) once the constitutionality of South Carolina's same sex marriage ban was determined by a federal district court.  2014 WL 5038396 at *2.  It is without question true that the South Carolina Supreme Court could not properly issue orders to a defendant in federal litigation that would have the purpose or effect of limiting the injunctive powers of the federal district court or direct him not to comply with a federal court order.  *See* 28 U.S.C. § 2283 (allowing a federal court to enjoin state court proceedings "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment"); *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972) (holding § 1983 "is an Act of Congress that falls within the 'expressly authorized' exception" of the Anti-injunction Act).  This Court reads *Wilson v. Condon* as having no such purpose and was designed simply to maintain the status quo regarding the issuance of same sex marriage licenses by South Carolina probate judges until a federal district court had the opportunity to address the constitutional challenge to the same sex marriage ban.  Any decision to stay the effect of a decision of a federal district court judgment would be the responsibility of the federal trial or appellate courts, and no state court could properly issue any order interfering with that judgment or directing federal court litigants to act contrary to the federal court judgment.  Therefore, this Court anticipates that the South Carolina Supreme Court's stay will be dissolved upon notice of this Court's decision, as it has previously indicated its intention to do so.  Should this assumption prove incorrect, the parties should promptly advise this Court.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
November 12, 2014