**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Colleen Therese Condon and<br>Anne Nichols Bleckley, | ) | Civil Action No.: 2:14-cv-04010-RMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS' PETITION FOR** |
| v. | ) | **ATTORNEYS' FEES AND COSTS AND** |
| | ) | **MEMORANDUM IN SUPPORT** |
| Alan Wilson, in his official capacity as | ) | |
| Attorney General; and, | ) | |
| Irvin G. Condon, in his official | ) | |
| capacity as Judge of Probate of | ) | |
| Charleston County, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Now comes Plaintiffs Colleen Theresa Condon and Anne Nichols Bleckley ("Plaintiffs"), the prevailing parties in the above-referenced action, who petition the Court to award them attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d). Based upon this memorandum, the attached supporting materials, and the record in this case, Plaintiffs seek a total sum of $152,709.98 in attorneys' fees, costs, and expenses.

## BACKGROUND AND PROCEDURAL HISTORY

On October 15, 2014, Plaintiffs filed a Complaint seeking declaratory and injunctive relief overturning South Carolina Constitution and state statutes -- namely S.C. Const. Art. XVII, § 15, S.C. Code Ann. § 20-1-10 and S.C. Code Ann. § 20-1-15 (hereinafter jointly referenced as the "marriage ban") -- that exclude same-sex couples from marriage, and permitting same-sex couples the freedom to marry. (Dkt. No.1.) Through their Complaint, Plaintiffs sought to enjoin Defendants and their officers, employees, and agents from

enforcing the marriage ban and any other sources of state law that preclude same-sex couples from marriage or refuse to recognize their lawful marriages.

Plaintiffs' filing of the Complaint was necessitated by the Defendants' actions on and after October 6, 2014, when the Supreme Court of the United States declined to grant certoriari in the case of *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), *cert denied*, 2014 U.S. LEXIS 6405 (Oct. 6, 2014).  In *Bostic,* the United States Court of Appeals for the Fourth Circuit unequivocally ruled that same-sex couples have a fundamental right to marry which cannot be denied or infringed absent a compelling state interest, 370 F.3d at 377, and rejected every justification the Commonwealth of Virginia conjured to justify its exclusion of same-sex couples from marriage. 370 F.3d. 384.  The U.S. Supreme Court denied all petitions for *certiorari* in *Bostic* on October 6, 2014. *Schaefer v. Bostic*, 2014 U.S. LEXIS 6405 (Oct. 6, 2014).   The Fourth Circuit thereafter issued its mandate. Accordingly and undeniably, same-sex couples throughout the Fourth Circuit should have been allowed to get married in the State as of October 6, 2014.

While Attorney Generals from North Carolina and West Virginia announced that they would follow the binding decision of the Fourth Circuit and stop defending marriage bans in pending federal litigation, Attorney General Wilson  released a statement on October 6, 2014 that read: "Our case has not yet been decided. Until the courts rule on the matter, South Carolina will seek to uphold our state constitution."  (Pls.' Mot. Prel. Inj., Ex. 4; Dkt. No. 12-5.)  Governor Haley likewise indicated her intention to obstruct the application of the Fourth Circuit's ruling, releasing the following statement through a spokesperson: "Governor Haley agrees with Attorney General Wilson – our voter-approved state law should be followed until a court rules on it directly."  "  (Pls.' Mot. Prel. Inj., Ex. 5; Dkt. No.

2

12-6.)

Judge Condon, on the other hand, recognized the binding nature of the Fourth Circuit's mandate and issued the following statement on October 8, 2014:

> As a result of the actions of the United States Supreme Court this past Monday, the Charleston County Probate Court is required to accept and issue marriage licenses for same-sex couples. Applications will be accepted beginning today, October 8, 2014, and the Charleston County Probate Court will issue the marriage licenses after the mandatory 24 hour waiting period unless stayed by the South Carolina Supreme Court or another appropriate court.

(Pls.' Mot. Prel. Inj., Ex. 6; Dkt. No. 12-7.) Plaintiffs thereafter applied for a marriage license at the Charleston County Probate Court and paid the requisite filing fee. (Compl. ¶ 20; Dkt. No.1.) Judge Condon accepted Plaintiffs' application and filing fee for a marriage license at or about 9:15 a.m. on October 8, 2014. (*Id.*) Plaintiffs are legally qualified to marry under the laws of South Carolina, except that they are the same sex, and want to marry each other in the State. (*Id.* ¶ 24.) Each Plaintiff is over the age of 18, and neither is precluded from marriage as a result of having another spouse or being closely related to each other. (*Id.*)

In conformity with Defendants' public statements and positions opposing marriage for same-sex couples, Defendant Wilson filed a Petition for Original Jurisdiction and Motion for a Temporary Injunction and Administrative Order (Pls.' Mot. Prel. Inj., Ex. 7; Dkt. No. 12-8) with the South Carolina Supreme Court to stop probate judges from issuing marriage licenses to same-sex couples. Plaintiffs objected and moved to intervene.

On October 9, 2014, before 9:15 a.m. Plaintiff Bleckley was present at the Charleston County Probate Court's office to pick up the Plaintiffs' couple's marriage license. (Compl. ¶ 23.) Under South Carolina Code section 20-1-230, Judge Condon was

required by State law to issue a marriage license to the Plaintiffs on October 9, 2014 at or about 9:15 a.m. On October 9, 2014, prior to Plaintiffs receipt of a marriage license, the South Carolina Supreme Court granted Defendant Wilson's motion and ordered Judge Condon not to issue marriage licenses to same-sex couples.  (Pls.' Mot. Prel. Inj., Ex. 8; Dkt. No. 12-9.)  The South Carolina Supreme Court issued an Order forbidding the issuance of marriage licenses to same-sex couples throughout the State until an order requiring such issuance is entered by the United States District Court for the District of South Carolina. (*Id.*)  Judge Condon declined to issue the license for the sole reason that the proceedings instituted by Defendant Wilson resulted in an order from the South Carolina Supreme Court.  (Pls.' Mot. Prel. Inj., Ex. 6; Dkt. No. 12-7.)

Consequently, on October 15, 2014, the undersigned filed suit on behalf of Plaintffs. (Dkt. No.1.)  Within eight days of filing the lawsuit, Plaintiffs' counsel filed four motions. Plaintiffs filed the Notice of Motion and Motion for a Preliminary Injunction with Memorandum of Law in Support and two supporting affidavits (Dkt. No.12) and the Notice of Motion and Motion for Summary Judgment (Dkt. No.13) along with a Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Dkt. No.13-1) on October 22, 2014. On October 23, 2014, Plaintiffs filed their Request for Expedited Trial (Ruling) (Dkt. No.18) and Plaintiffs' Notice of Motion and Motion to Alter/Amend Time for Defendants to Respond to Plaintiffs' Motion for Summary Judgment (Dkt. No.19).

On October 24, 2014, counsel represented the parties at a status conference on the case.  (Dkt. Nos.10, 15, and 23.)

Defendants Haley and Wilson filed a 57-page memorandum in opposition to preliminary injunction (Dkt. No.29) at 4:25 p.m. on November 3, 2014, which required a

4

response from Plaintiffs by noon, November 5, 2014.  In their voluminous opposition brief as well as their memorandum in opposition to summary judgment (Dkt. No.34), and the motion to dismiss they filed in lieu of an answer (Dkt. No.33), Defendants Governor Haley and Attorney General Wilson continued to support the marriage ban and to vigorously oppose granting the relief sought by Plaintiffs.

On November 12, 2014, this Court issued a final Order in the case. (Order; Dkt. No.37.) This Court "carefully reviewed the language of South Carolina's constitutional and statutory ban on same sex marriage and [found] that there is no meaningful distinction between the existing South Carolina provisions and those of Virginia declared unconstitutional in *Bostic*." (*Id.* at 19.)  Going on to state, that "[w]hile a party is certainly free to argue against precedent, even very recent precedent, the Fourth Circuit has exhaustively addressed the issues raised by Defendants and firmly and unambiguously recognized a fundamental right of same sex couples to marry and the power of the federal courts to address and vindicate that right." (*Id.* at 20.)  The Court concluded that the marriage ban "unconstitutionally infringe[s] on the rights of Plaintiffs under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and [is] invalid as a matter of law" (*Id.* at 21) and granted a permanent injunction against Defendants Attorney General Wilson and Judge Condon as well as their officers, agents, servants, and employees.

The next day, on November 13, 2014, Defendant Attorney General Wilson continued the assault, appealing to the Fourth Circuit Court of Appeals. (Notice of App.; Dkt. No. 39.)  He simultaneously filed a 20-page Motion for Emergency Stay, to which the Fourth Circuit required a response from Plaintiffs by November 17, 2014, at 10 a.m.  When

5

the Fourth Circuit denied said motion on November 18, 2014, the Attorney General, undeterred, immediately filed with the US Supreme Court an Emergency Application to Stay the United States District Court Order. After notifying the Clerk of the Supreme Court that we intened to file an opposition brief, Plaintiffs' counsel worked around the clock to draft an opposition brief. On November 20, 2014, at 9:57 a.m., the Supreme Court denied the motion to stay. Attorney General Wilson's appeal is still pending before the Fourth Circuit although he has filed a Motion for Stay or Continuance of Appeal pending a final decision by the Supreme Court regarding the petitions for writ of certiorari filed in *DeBoer v. Snyder*, No. 14-1341, 2014 WL 5748990 (6th Cir. Nov. 6, 2014).

Plaintiffs now seek an award of attorneys' fees, costs, and expenses incurred to date.

## ARGUMENT

The Court granted Plaintiffs' motion for summary judgment, alleging violations of 42 U.S.C. § 1983, and denied Defendants' motions to dismiss and for summary judgment. (Dkt. No. 37.) As a result, Plaintiffs are prevailing parties entitled to attorneys' fees. As Congress has provided: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Moreover, the United States Supreme Court has held that the enforcement of federal civil rights laws depends upon "private litigation as a means of securing compliance with the law." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968). The availability of fee awards for prevailing parties is critical if private parties are to undertake litigation to vindicate the civil rights laws. *See Id*. The

6

purpose of providing for an award of such fees and expenses to prevailing parties is to encourage "'private litigants to act as 'private attorneys general' in seeking to vindicate the civil rights laws. . . . 'Congress depends heavily upon private citizens to enforce the fundamental rights involved.  The awards are a necessary means of enabling private citizens to vindicate these Federal rights.'"  *Donnell v. United States*, 682 F.2d 240, 245 (D.C. Cir. 1982) (quoting S. Rep. No. 94-295 at 40 (1975), 1975 U.S.C.C.A.N. at 774, 807).

As the Fourth Circuit has held, "[i]n light of Section 1988's language and purpose, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) (quotations, citations, and alterations omitted).  An enhanced award may be justified "in some cases of exceptional success." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

I.    **Plaintiffs are entitled to the requested attorneys' fees and costs**

A.    **Plaintiffs are prevailing parties.**

The Supreme Court has held that civil rights parties are prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought." *Texas State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789 (1989) (quotation marks omitted); *Hanrahan v. Hampton*, 446 U.S. 754, 756-58 (1980). Plaintiffs here succeeded on *every* significant issue in litigation: the marriage ban has been struck as unconstitutional, and Defendants' motions to dismiss (raising various merits and procedural arguments) was denied.  Marriage licenses are being issued to, and marriages

are taking place between, same-sex couples in South Carolina for the first time in history by virtue of Plaintiffs' lawsuit. Plaintiffs clearly are the prevailing parties in this case.

### B.    Plaintiffs' fees are reasonable.

The only remaining question is whether the fees sought are reasonable.  As explained below, the fees, expenses, and costs that Plaintiffs seek are reasonable for litigation of this type and scope.

An award of attorneys' fees is calculated using the lodestar method, which is determined by multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar "is presumed to be the reasonable fee," *Blum*, 465 U.S. at 897; *accord People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996), and "includes most, if not all, of the relevant factors constituting a reasonable attorneys' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986), *supplemented by* 487 U.S. 711 (1987); *see also Ohio Valley Environmental Coalition v. Hurst*, No. 3:03-cv-2281, 2011 WL 3563295, at *10 (S.D. W.Va. Aug. 11, 2011).

The fee award is guided by *Barber v. Kimbrells, Inc.,* 577 F.2d 216 (4th Cir.1978), which describes the "lodestar" approach to fee setting. Id.  The lodestar figure, determined by multiplying reasonable hourly rates by the reasonable number of hours involved, is generally considered to be the proper starting point for determining a statutory award of attorney's fees. *Id.*  The "reasonableness" of the resulting figure is then tested against the following twelve factors from *Barber:* (1) the time and labor expended; (2) the novelty and

8

difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the expertise, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fee awards in similar cases. *Barber*, 577 F.2d at 226.

Two issues are addressed below demonstrating the reasonableness of Plaintiffs' requested fees: 1) the reasonable number of hours expended by Plaintiffs' attorneys to litigate this case; and 2) the hourly rates sought by Plaintiffs' counsel. As explained further below, both the hours incurred and the rates charged were reasonable for a case of this nature.

## 1. Plaintiffs seek compensation for a reasonable number of hours.

As the Court noted, "in addressing Plaintiffs' constitutional claim to a fundamental right to marry, this Court [did] not write on a blank canvas." (Order at 11; Dkt. No. 37.) This case is one of many proceeding through the federal courts to challenge same-sex marriage bans in the wake of the United States Supreme Court decision in *Windsor*, decided approximately 18 months ago. (*Id.* at 12); *United States v. Windsor*, 133 S. Ct. 2675 (2013). This case involved a "fundamental right"—the right given to every individual to exercise choice in the important relationship of marriage. (Order at 22.)

Plaintiffs thus appropriately hired experienced attorneys who have substantial experience in civil rights cases, including gay and lesbian rights. Attached hereto are the affidavits of attorneys M. Malissa Burnette (**Exhibit 1**), Nekki Shutt (**Exhibit 2**), Affidavit of Jon Davidson (**Exhibit 3**), Affidavit of Camilla B. Taylor (**Exhbit 4**), Affidavit of Gregory R. Nevins (**Exhibit 5**), and Affidavit of Elizabeth "Beth" Littrell (**Exhibit 6**) which demonstrate that experience. For example, Attorney Burnette has undertaken cases that challenge the *status quo*, including *Tara Bailey v. S.C. High School League*, C/A No.: 3:85-246-S (D.S.C.), which allowed girls in SC public schools to play contact sports, and *The United States of America and Nancy Mellette v. James Jones*, *et al.*, C/A No.: 2:93-0488-12 (D.S.C.), which opened the doors of the state-supported Citadel to female students; she also recently represented Police Chief Crystal Moore of Latta, South Carolina, in her grievance hearing to reveal facts that led to her reinstatement after she was fired by the Mayor, related to her sexual orientation. (Burnette Aff. ¶ 10; Ex. 1.)

Plaintiffs' attorneys in this case have represented clients in numerous prior suits challenging the constitutionality of same-sex marriage bans.[1] Attorney Nevins was party

---

[1] *See, e.g., Sevcik v. Sandoval*, ___F.3d ___, No. 12-17668, 2014 WL 4977682 (9th Cir. Nov. 6, 2014) (holding Nevada's marriage ban unconstitutional); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) (holding Indiana marriage ban unconstitutional), *Bostic v. Schaeffer*, 760 F.3d 352 (4th Cir. 2014) (counsel for intervening appellee class of Virginia same-sex couples) (holding Virginia marriage ban unconstitutional), *cert. denied sub nom. Rainey v. Bostic*, 190 L. Ed. 2d 140 (2014), *sub nom. Schaefer v. Bostic*, 190 L. Ed. 2d 140 (2014), and *sub nom. McQuigg v. Bostic*, 190 L. Ed. 2d 140 (2014); *Henry v. Hodges*, 14 F.Supp.3d 1036 (S.D. Ohio 2014) (invalidating Ohio's ban on recognition of same-sex couples' out-of-state marriages), *rev'd sub nom DeBoer v. Snyder*, ___F.3d___, No. 14-3464, 2014 WL 5748990 (6ᵗʰ Cir. 2014), *cert petition pending*; *Conde-Vidal v. Garcia Padilla*, ___F.Supp.3d___, No. 3:14-cv-01253-PG, 2014 WL 5361987 (D.P.R. Oct. 21, 2014) (challenging Puerto Rico's marriage ban), *appeal pending*; *Majors v. Horne*, 14 F.Supp.3d 1313 (D. Ariz. 2014) (holding Arizona's marriage ban unconstitutional); *Robicheaux v. Caldwell*, 2 F.Supp.3d 910 (E.D. La. 2014), *appeal and cert petition pending*; *Lee v. Orr*, 13-cv-8719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014) (holding Illinois' marriage ban unconstitutional); *Gray v. Orr*, No. 13 C 8449, 2013 WL 6355918 (N.D. Ill. Dec. 5, 2013) (granting temporary restraining order to permit same-sex couple to marry); *Garden State*

counsel in the marriage litigation leading to the controlling Fourth Circuit precedent governing this case. *Bostic v. Schaeffer*, 760 F.3d 352 (4th Cir. 2014) (counsel for intervening appellee class of Virginia same-sex couples) (holding Virginia marriage ban unconstitutional), *cert. denied sub nom. Rainey v. Bostic*, 190 L. Ed. 2d 140 (2014), *sub nom. Schaefer v. Bostic*, 190 L. Ed. 2d 140 (2014), and *sub nom. McQuigg v. Bostic*, 190 L. Ed. 2d 140 (2014). He has also been counsel on dozens of significant constitutional cases that have helped develop the law concerning the rights of lesbian, gay, bisexual and transgender people. (Nevins Aff. ¶ 4, Ex. 5). Attorney Littrell was party counsel in the successful marriage litigation filed in West Virginia prior to the *Bostic* decision. *McGee v. Cole*, 2014 U.S. Dist. LEXIS 158680 (S.D. W. Va. Nov. 7, 2014). She likewise has been counsel on numerous significant constitutional cases that have helped develop the law concerning the rights of lesbian, gay, bisexual and transgender people. (Littrell Aff. ¶ 5, Ex. 6.) As the Marriage Project Director for Lambda Legal, Attorney Taylor has extensive litigation experience in this area of the law. She has been party counsel in numerous cases successfully challenging the constitutionality of marital exclusions around the country, including *Baskin*, 766 F.3d 648, *Lee*, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014), *Garden State Equal.*, 82 A.3d 336, and *Gartner v. Iowa Dep't of Public Health*, 830 N.W.2d 335 (Iowa 2013), to name a few, and she has extensive expertise in briefing and arguing such cases. (Taylor Aff. ¶ 4; Ex. 4.) She recently argued *Baskin, supra,* 766 F.3d 648,

_____

*Equal. v. Dow*, 82 A.3d 336 (N.J. Super. Ct. Law Div. 2013) (holding New Jersey's marriage ban unconstitutional); *Varnum v. Brien*, 763 N.W. 2d 862 (Iowa 2009) (holding Iowa's marriage ban unconstitutional*); In re Marriage Cases*, 183 P.3d 384 (Cal. 2008) (holding California's marriage ban unconstitutional); *Baehr v. Lewin,* 852 P.2d 44 (Haw. 1993) (finding Hawaii marriage ban discriminated based on sex); *Darby v. Orr,* No. 12-CH-19718 (Ill. Cir. Ct., Cook Cnty. Sept. 27, 2013) (challenging Illinois' marriage ban); *Inniss v. Aderhold,* No. 1:14-cv-01180-WSD (N.D. Ga. filed Apr. 22, 2014) (challenging Georgia's marriage ban); *Jorgensen v. Dalrymple,* No. 3:14-cv-00058-RRE-KKK (D. N.D. filed Jun. 9, 2014) (challenging North Dakota's marriage ban).

before the district court and Seventh Circuit Court of Appeals, which resulted in a decision striking down Indiana's marriage ban. (*Id.*) She was lead counsel in *Varnum*, 763 N.W. 2d 862, in which the Iowa Supreme Court unanimously struck down Iowa's marriage ban in April, 2009, making Iowa the third state in the nation to permit same-sex couples to marry. (*Id.*)

Attorney Davidson is the Legal Director of Lambda Legal and has been instrumental in the litigation efforts and strategy that has led to the avalanche of cases striking down marriage bans across the country over the past year. He has also been co-counsel in litigation that initially won the right of same-sex couples to marry in California, *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008), and that won the right of same-sex couples to marry in Virginia, *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), and in Nevada, *Sevcik v. Sandoval*, *decided sub nom. Latta v. Otter*, No. 12-17668, __F.3d __, 2014 WL 4977682 (9th Cir. Nov. 6, 2014).

Lambda Legal was party counsel in *Romer v. Evans*, 517 U.S. 620 (1996), and *Lawrence v. Texas*, 539 U.S. 558 (2003), and *amicus* in *United States v. Windsor*, 133 S. Ct. 2675 (2013), the leading Supreme Court cases redressing sexual orientation discrimination. *(*Nevins Aff. at ¶ 2; Ex. 5.)

The extensive experience of Plaintiffs' counsel, particularly in cases challenging discrimination against gay and lesbian clients, made them well-suited to these responsibilities. Given the importance of the issues presented in this case, and the fact that Plaintiffs' lawyers had handled similar cases in the past (and thus could perform their duties more efficiently than counsel with less experience in this area of law), Plaintiffs were quite reasonable in retaining attorneys from Lambda Legal, Callison Tighe, and Nexsen

Pruett to advance their interests throughout the course of this litigation. Plaintiffs' lawyers also leanly staffed this case, working to avoid duplication of effort and using attorneys with appropriate levels of experience to handle the various litigation tasks. *(See* Shutt Aff. ¶¶ 20-23; Ex. 2.) In order to avoid unnecessary or duplicative work or the inefficient use of resources, responsibilities in this case were allocated among several different attorneys only when necessary, and according to the experience and expertise of each attorney. *(See Id.)* For example, the work required to evaluate the merits of the lawsuit and maintain relations and communications with South Carolina plaintiffs was performed by Attorneys Shutt and Burnette, who are South Carolina attorneys with longstanding experience advocating for the rights of lesbian, gay, bisexual, and transgender ("LGBT") South Carolinians. (*Id.* ¶ 14; Ex. 2; Burnette Aff.; Ex. 1.) Having the most factual knowledge about the Plaintiffs and the events leading up to the filing of the lawsuit, Attorney Shutt drafted the Complaint and then circulated it among co-counsel for refinement. (Shutt Aff. ¶ 16; Ex. 2.) Significant portions of the briefing in this case were performed by Attorney Littrell, who is a senior attorney at Lambda Legal's Southern Regional Office, but who is junior to Lambda Legal Attorneys Davidson, Taylor, and Nevins who reviewed drafts and provided refinements based upon their national experience. (*Id.* ¶ 35; Ex. 2.); Burnette, in addition to having research, drafting and editing responsibilities, served as Plaintiffs' counsel's spokeperson to the Court, opposing counsel, and for public messaging. (Burnette Aff.; Ex. 1.)

Plaintiffs' attorneys are seeking compensation for the hours and legal work listed in the time sheets and invoices attached to their affidavits and declarations. (Exs. 1-6.) As noted above, these fees pertain to work performed by Plaintiffs' attorneys throughout the course of this intensive litigation, which included, among other things: drafting the

Complaint (Dkt. No. 1); preparing four motions within a span of eight days,including Notice

of Motion and Motion for a Preliminary Injunction with Memorandum of Law in Support and

two supporting affidavits (Dkt. No.12), the Notice of Motion and Motion for Summary

Judgment (Dkt. No.13) along with a Memorandum in Support of Plaintiffs' Motion for

Summary Judgment (Dkt. No.13-1), Plaintiffs' Request for Expedited Trial (Ruling)  (Dkt.

No.18), and Plaintiffs' Notice of Motion and Motion to Alter/Amend Time for Defendants to

Respond to Plaintiffs' Motion for Summary Judgment (Dkt. No.19); replying to Defendants

Governor Haley and Attorney General Wilson's 57-page memorandum in opposition to a

preliminary injunction (Dkt. No. 32); attending a status conference; preparing and filing

briefs on the issue of staying the case; and ultimately obtaining a favorable final judgment.

Based on time records, Plaintiffs' attorneys and paralegal and legal support staff

spent the following hours working on this case (as verified and substantiated in detail in the

attached Declarations and Affidavits of Burnette, Shutt, Davidson, Taylor, Nevins, and

Littrell):[2]

| ATTORNEYS: | HOURS: |
|------------|--------|
| M. Malissa Burnette | 117.85 |
| Nekki Shutt | 133.20 |
| Jacqueline Pavlicek | 7.50 |
| Jon Davidson | 8.6 |
| Camilla Taylor | 11.7 |
| Gregory Nevins | 22.0 |
| Beth Littrell | 145.20 |

Plaintiffs' attorneys have reviewed the time records summarized above and

reprinted in the Attachments to their Affidavits and Declarations.  These records show

---

[2] Expenses incurred for paralegal services are recoverable. *See Missouri v. Jenkins*, 491 U.S. 274, 289 (1989). Delegating appropriate tasks to paralegals reduces the overall costs of civil rights litigation.  *Id.* at 288.  Also, time spent preparing and defending a fee petition is compensable under 42 U.S.C. § 1988.  *See Ganey v. Garrison*, 813 F.2d 650, 652 (4th Cir. 1987).

sound and reasonable billing judgment. For example, Plaintiffs' counsel excluded time for which their firms did not feel it was appropriate to bill during the course of the litigation, and also excluded additional hours to ensure that compensation is not sought for work that might be deemed as properly excluded from a court-ordered fee award. *(See* Burnette Aff. ¶ 16, Shutt Aff. ¶ 18, Davidson Aff. ¶ 4, Taylor Aff. ¶ 7, Nevins Aff. ¶ 9, Littrell Aff. ¶ 7; Exs. 1-6, respectively.)

### 2. Plaintiffs seek reasonable hourly rates for their attorneys.

The hourly rate included in an attorney's fee calculation must also be reasonable. *See Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). "This requirement is met by compensating attorneys at the prevailing market rates in the relevant community." *Id.*

In cases that require only a "relatively straightforward procedural analysis," the relevant community will be the one in which the court sits. *Allen v. Monsanto Co.*, No. 2:05-cv-0578, 2007 WL 1859046, at *2 (S.D. W.Va. June 26, 2007). However, "[i]n circumstances where it is reasonable to retain attorneys from other communities, . . . the rates in those communities may also be considered." *Rum Creek*, 31 F.3d at 175.

The hourly rates sought here by Plaintiff's attorneys — $175.00 to $400.00 — are reasonable. Evaluating whether the rate charged is a customary fee requires the consideration of "various information, including affidavits, recent fee awards in comparable cases and specific evidence of counsel's actual billing practice or other evidence of actual rates which counsel can command in the market." *Liberty Mut. Ins. Co. v. Employee Res. Mgmt., Inc.*, 176 F. Supp. 2d 510, 535 (D.S.C. 2001). An affidavit indicating that the rates an attorney charged are that attorney's "normal, ordinary and customary rates" suffices to

establish actual billing practice. *Alexander S. by & through Bowers v. Boyd*, 929 F. Supp. 925, 937 (D.S.C. 1995), *aff'd sub nom. Burnside v. Boyd*, 89 F.3d 827 (4th Cir. 1996).

There are no lodestar guidelines for the State of South Carolina or for all federal courts. As a result, attorneys in South Carolina charge a variety of rates based upon what the market will bear, their experience, level of expertise, etc.

Briefly, here is a synopsis of some of the approved rates in this circuit and elsewhere. Various courts of law in South Carolina previously have deemed that rates greater than or equal to those charged by co-counsel are reasonable for the purposes of awarding attorneys' fees. In a relatively recent case, the District Court for the District of South Carolina found $600.00 per hour to be a reasonable rate for the head of a law firm engaged in complex civil litigation in Charleston since 1979. *Sauders v. South Carolina Public Service Authority*, 2011 WL 1236163 (D.S.C. Mar. 30, 2011). Another federal court determined that a rate of $350.00 per hour was a reasonable rate. *See Krantz v. KLI, Inc.*, No.: 6:09-cv-01623-JMC, 2011 WL 6026289 (D.S.C. Dec. 5, 2011). Moreover, South Carolina's Fifth Judicial Circuit has approved as reasonable a rate of $300.00 per hour. *See, e.g., Floyd v. First Financial Corp.*, No.: 2005-CP-28-0225R, 2007 WL 5516242 (C.P. 5th Cir. Jan. 12, 2007). Finally, the South Carolina Supreme Court has affirmed lower court decisions holding that a $300.00 fee is reasonable. *Robinson v. Robinson*, 365 S.C. 583, 586, 619 S.E.2d 425, 426 (2005).

Given the formidable task of seeking to have the marriage ban struck down as unconstitutional—which was certainly not a "relatively straightforward procedural analysis," as shown by the bevy of arguments made in Defendants' 57-page memorandum in opposition to a preliminary injunction, their memorandum in opposition to summary judgment, and their motion to dismiss and for stays—it was reasonable for Plaintiffs to

seek outside counsel with considerable experience handling suits alleging discrimination based on gender and sexual orientation, as well as violations of fundamental rights.

The hourly rates sought by Plaintiffs' attorneys (from Callison Tighe, Lambda Legal, and Nexsen Pruet), as well as their paralegal/legal support staff, reflect their years of practice, litigation experience, and expertise. We explain below for each attorney the exceptionally high level of experience and expertise justifying their hourly rates.

### CALLISON TIGHE

Callison Tighe Attorneys Burnette, Shutt, and Pavlicek ask the Court to award fees to Plaintiffs at the rates of $350.00, $325.00, and $175.00, respectively. (Burnette Aff. and Shutt Aff.; Exs. 1-2.) Attorney David Rothstein has submitted an affidavit in support of the reasonable hourly rates for Callison Tighe attorneys, all of whom are located in Columbia, South Carolina. Attorney Rothstein's affidavit is attached as **Exhibit 7.** Additionally, Attorney J. Lewis Cromer has offered an affidavit -- **attached as Exhibit 8** -- which supports the reasonableness of the legal fees sought herein.

#### M. Malissa Burnette

Attorney Burnette graduated law school in 1977. (Burnette Aff.; Ex. 1.) She served as an attorney in the Office of the Governor, CETA Division, from 1977-1979. Thereafter, she was appointed Chief of Staff to Lieutenant Governor Nancy Stevenson, 1979-June 1982. After managing the campaign for Attorney General Travis Medlock in the general election, she co-founded a law firm in Columbia, South Carolina and has been in the private practice of law as a partner or member since November 1982. Most recently, she joined Callison Tighe & Robinson, LLC in August 2010 as a member, merging her existing employment law and civil rights practice with the firm. Almost all of her current practice involves employment law, civil rights, academic law and litigation. She has been a Certified Specialist in Employment and Labor Law since 1993. She has been a Certified Federal Court Mediator since 2010 and regularly mediates state and federal court cases involving employment, constitutional and civil rights issues. She has taught over 60 Continuing Legal Education seminars, most recently to 1) United States Attorneys at the National Advocacy Center, 2) SC government attorneys at a CLE sponsored by the SC Attorney General's Office, and 3) North Carolina and South Carolina attorneys specializing in labor and employment law. She is the co-author and editor

of all four editions of <u>Labor and Employment Law for South Carolina Lawyers</u>, (S.C. Bar). In May 2011, the SC Bar's Employment and Labor Law Section selected her as its first Distinguished Lawyer Award recipient. She has been recognized by her peers for excellence in the fields of employment law and alternative dispute resolution by being named one of <u>The Best Lawyers in America</u>, 2005-2015. Shehas been recognized in *South Carolina Super Lawyers* in the category of Plaintiff's Employment Litigation, 2008-2014. Burnette served as President of the S.C. Women Lawyers Association (2001), Chair of the S.C. Bar's Judicial Qualifications Committee (1999-2000 and 2000-2001), and Chair of the S.C. Association for Justice's Employment Law Section (1990-1995 and 2001-2004).

**Nekki Shutt**
Attorney Shutt has engaged in the full-time practice of law since admission to the South Carolina Bar in 1995. (Shutt Aff.; Ex. 2.) In addition to practicing law, she served as an adjunct professor at the University of South Carolina School of Law from 2001 through 2005, teaching a social justice, perspective class entitled, "Gender, Sexuality, Race, Disability, Poverty, and the Law," and alternatively titled, "Diversity in the Law." Shutt concentrates her practice in ERISA litigation, employment litigation, commercial civil litigation, and civil rights litigation. Some examples of seminars at which she frequently lectures on ERISA, employment law, and LGBT issues to groups such as the South Carolina Bar Convention's Labor and Employment Law Update 2004 and 2009; the NC/SC Labor and Employment Law Program and Annual Meeting, 2006, 2009, and 2012; the Columbia Society for Human Resource Professionals, 2006- 2011 and 2013 to present; and the Palmetto Paralegal Association in 2010 and 2014. In 2005, she received the James L. Petigru Compleat Lawyer Award, Silver Medallion from the USC School of Law Alumni Association. In 2010, she chaired the Employment and Labor Law Section of the South Carolina Bar. Since July 2011, she has been a certified Employment and Labor Law Specialist. She is a founder and the first chairperson of South Carolina Equality Foundation, Inc., a statewide organization dedicated to securing civil and human rights for LGBT South Carolinians -- serving on that board for ten years. From 1995 through 2000, she served on the national board of the Victory Fund, a political organization dedicated to getting LGBT individuals elected and appointed to political office, and served as board co-chair from 1998 to 2000.

## LAMBDA LEGAL

Lambda Legal is the nation's oldest and largest legal organization committed to achieving full recognition of the civil rights of LGBT people and those living with HIV through impact litigation, education, and public policy work. (Taylor Aff.; Ex. 4.) Lambda Legal is a 501(c)(3) public interest law firm that does not charge its clients, but relies in part upon fees awarded by the courts. Legal services and other non-profit organizations are

entitled to have § 1988 fee awards computed on the basis of reasonable market rates even if lower salaries are paid to the organization's attorneys. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *accord Washington v. Seattle School Dist.*, 458 U.S. 457 n.37 (1982). The rates requested by Lambda Legal attorneys (between $325.00 and $400.00, depending on experience, *see* Davidson Aff. ¶ 3; Taylor Aff. ¶ 6; Nevins Aff. ¶ 6; Littrell Aff. ¶ 3) are well within the range of fees awarded in this jurisdiction, and significantly below the market rates for civil rights lawyers with comparable experience, ability, and reputation in their respective markets. *See, e.g., Sauders,* 2011 WL 1236163 (D.S.C. Mar. 30, 2011) (finding $600.00 per hour to be a reasonable rate for the head of a Charleston law firm engaged in complex civil litigation practice); *Stiltner v. Cabell County Comm'n*, No. 3:13–cv–07513, 2014 WL 1330206 (S.D. W. Va. Apr. 1, 2014); *Gibson v. City of Chicago,* 873 F.Supp.2d 973 (N.D. Ill. 2012); *Torres v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 127890, 10 (S.D.N.Y. Aug. 6, 2012).

Burnette and Shutt's affidavits support that these Lambda Legal attorneys are subject matter experts who warrant the rates sought. (Burnette Aff. ¶¶13-15, Shutt Aff. ¶¶ 34-35; Exs. 1-2.) These fees are likewise reasonable given the efficiency and speed with which this case was able to be successfully litigated and Lambda Legal lawyers here epitomize the recognition that "the primary justification for awarding high-end hourly rates for experienced counsel in § 1983 litigation is that their very experience and skill will result in economies of time because of their lack of need for extensive background legal research." B*uffington v. Baltimore County*, 913 F.2d 113, 130 (4th Cir. 1990) (citing *Blum,* 465 U.S. 898.

These lawyers' credentials also support the reasonableness of the fees sought:

**Jon Davidson**

Attorney Davidson received his undergraduate degree in 1976, with distinction, from Stanford University prior to attending Yale Law School, where he received his Juris Doctorate in 1979. (Davidson Aff. ¶ 2; Ex. 3.) From September of 1979 through September of 1980, Davidson was a law clerk to the late Hon. William Matthew Byrne, Jr., on the U.S. District Court for the Central District of Columbia. In September 1980, he became an associate and subsequently a partner at the Los Angeles law firm of Irell & Manella, where he concentrated in handling complex civil litigation and also engaged in significant pro bono civil rights work. In September 1988, he became Senior Staff Counsel and Director of the Lesbian and Gay Rights Project of the ACLU Foundation of Southern California, where he worked exclusively on impact litigation involving claims of discrimination and/or violation of constitutional rights and was lead or co-counsel on numerous significant constitutional cases involving the rights of lesbians and gay men. During this period as well as contemporaneously with Davidson's current employment, he also served as an adjunct law professor at the UCLA School of Law, the USC Law Center, Loyola Law School, and Whittier Law School's international summer program, teaching classes on pretrial advocacy, sexual orientation and the law, the rights of lesbian and gay youth, AIDS and the law, and principles of liberty and equality.

In May of 1995, Davidson became supervising attorney for Lambda Legal, where since that time he has continued to practice constitutional litigation with an expertise in issues affecting LGBT individuals and their families. In May 2000, he was promoted to senior counsel at Lambda Legal. In December 2004, he was again promoted to his current position as the Legal Director of Lambda Legal. As the organization's Legal Director, Davidson supervises the legal work of the entire organization across the nation, including the work of our 22 full-time attorneys and the cooperating attorneys with whom we work. This frequently involves consulting on litigation strategy and arguments to be made and editing of pleadings and briefs. He also directly act as counsel in important pieces of litigation. Davidson has been co-counsel in litigation that initially won the right of same-sex couples to marry in California, *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008), and that won the right of same-sex couples to marry in Virginia, *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), and in Nevada, *Sevcik v. Sandoval*, *decided sub nom. Latta v. Otter*, No. 12-17668, __F.3d __, 2014 WL 4977682 (9th Cir. Nov. 6, 2014). Due to his extensive and ongoing research on various constitutional issues, he also routinely give speeches and presentations, lawyers, to law students, community leaders, non-profit organizations and at various conferences, and he has written extensively on these issues.

**Camilla B. Taylor**

Attorney Taylor received her law degree from Columbia Law School in 1996 and her bachelor's degree from Yale College in 1993. (Taylor Aff. ¶ 5; Ex. 4.) She has been admitted to practice law in New York since 1997 and in Illinois since 2004. After working as a litigation associate with Shearman & Sterling LLP in New York City and as an attorney with the Criminal Appeals Bureau of the Legal

Aid Society of New York City, Ms. Taylor joined Lambda Legal in July 2002. Ms. Taylor was promoted to National Marriage Project Director for Lambda Legal in the spring of 2010. Ms. Taylor has extensive expertise briefing and arguing cases before both state and federal trial and appellate courts in cases challenging the constitutionality of marital exclusions around the country, including *Baskin*, 766 F.3d 648, *Lee*, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014), *Garden State Equal.*, 82 A.3d 336, and *Gartner v. Iowa Dep't of Public Health*, 830 N.W.2d 335 (Iowa 2013), to name just a few. Recently, Ms. Taylor argued *Baskin, supra,* 766 F.3d 648, before the district court and Seventh Circuit Court of Appeals, which resulted in a decision authored by Judge Posner striking down Indiana's marriage ban. She was lead counsel in *Varnum*, 763 N.W. 2d 862, in which the Iowa Supreme Court unanimously struck down Iowa's marriage ban in April, 2009, making Iowa the third state in the nation to permit same-sex couples to marry. Ms. Taylor is an adjunct professor at Northwestern University School of Law, and serves on the American Constitution Society Chicago Chapter Board of Advisors. Recognition for her work includes the Columbia Law School Distinguished Graduate in the Public Interest award (2012), the American Constitution Society Ruth Goldman Award (2012), and *Crain's Chicago Business*' "40 under 40" (2009), among others.

**Gregory Nevins**

Attorney Nevins received his law degree from Harvard Law School (1989). (Nevins Aff. ¶ 5; Ex. 5.)   He was admitted to practice law in California in 1989, but took inactive status there in 2002. He has been admitted to practice law in Georgia since 2002.  In 2007, he was awarded the Stonewall Bar Association's (the Georgia LGBT bar association) Outstanding Service to the Stonewall Community Award.  He has been a lawyer with Lambda Legal since January 2002.  Nevins was party counsel in the marriage litigation leading to the controlling Fourth Circuit precedent governing this case. *Bostic v. Schaeffer*, 760F.3d 352 (4th Cir. 2014) (counsel for intervening appellee class of Virginia same- sex couples) (holding Virginia marriage ban unconstitutional), *cert. denied sub      nom. Rainey v. Bostic*, 190 L. Ed. 2d 140 (2014), *sub nom. Schaefer v. Bostic*, 190 L. Ed. 2d 140 (2014), and *sub nom. McQuigg v. Bostic*, 190 L. Ed. 2d 140  (2014).

**Beth Littrell**

Attorney Littrell received her undergraduate degree in 1998, *cum laude*, from Georgia State University prior to attending Georgia State University College of Law, where she received her *Juris Doctorate* in 2001. From January 2001 through May 2007, she worked at the American Civil Liberties Union (ACLU) of Georgia, first as a staff attorney and later as the Associate Legal Director. During her tenure at the ACLU, Littrell worked exclusively on impact litigation and constitutional claims and was lead or co-counsel on numerous significant cases.

She researched and drafted legal memoranda and briefs, as well as coordinated and presented workshops to attorneys and school officials   on emerging legal issues surrounding First Amendment rights, constitutional litigation and constitutional claims in the public and private school setting. From August of 2001 through January 2007, she taught First Amendment law as an adjunct professor at Georgia State University.  In May of 2007, Littrell became a  staff attorney for Lambda Legal, where she has continued to practice constitutional litigation with an expertise in issues affecting LGBT individuals and families.

### a.   Plaintiffs' attorneys' hourly rates.

| ATTORNEYS: | RATES: |
|---|---|
| M. Malissa Burnette | $350.00 |
| Nekki Shutt | $325.00 |
| Jacqueline Pavlicek | $175.00 |
| Jon Davidson | $400.00 |
| Camilla Taylor | $350.00 |
| Greg Nevins | $375.00 |
| Beth Littrell | $325.00 |

### b.   Plaintiffs' fee award should equal $151,283.50.

Multiplying the time worked by each attorney by the hourly rates for each year yields the following calculation:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| M. Malissa Burnette | 117.85 | $350.00 | $41,247.50 |
| Nekki Shutt | 133.20 | $325.00 | $43,290.00 |
| Jacqueline Pavlicek | 7.50 | $175.00 | $ 1,312.50 |
| Jon Davidson | 8.60 | $400.00 | $ 3,440.00 |
| Camilla Taylor | 11.70 | $350.00 | $ 4,095.00 |
| Gregory Nevins | 22.00 | $375.00 | $ 8,250.00 |
| Beth Littrell | 142.80 | $325.00 | $46,410.00 |
| | | | $148,044.00 |

| STAFF | HOURS | RATE | TOTAL |
|---|---|---|---|
| Amy Abercrombie (paralegal) | 22.90 | $115.00 | $2,633.50 |
| Watson J. Rea (law clerk) | 2.30 | $90.00 | $ 207.00 |
| Hydie Kirkland (paralegal) | 3.80 | $105.00 | $ 399.00 |

22

<u>$3,2395.00</u>

### c.    Plaintiffs are entitled to the requested expenses and costs of 1,426.48.

With regard to expenses and costs, the invoices attached to the Shutt and Littrell Affidavits detail the out-of-pocket expenses incurred. *(See* Shutt Aff. ¶ 30; Ex. 2 and Littrell Aff. ¶ 8; Ex. 6.)   These expenses were necessarily incurred and are the type of out-of-pocket expenses normally billed to fee-paying clients.  As such, they are recoverable as part of Plaintiffs' attorneys' fees.  *See West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991).  These "costs" are recoverable as defined by 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d), as well as other disbursements that were billed to and paid by Plaintiffs as a component of attorneys' fees.

It is also appropriate to require Defendants to reimburse Plaintiffs' attorneys for reasonable costs.  A reasonable attorneys fee includes "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988). Here, Plaintiffs' counsel have included in the supporting affidavits a detailed accounting requesting compensation for such out of pocket expenses as travel, exhibit preparation, copies, postage, deposition costs, printing costs, and the like.  These are the sorts of expenses generally charged to a fee paying client and should be reimbursed fully.

Plaintiffs seek reimbursement for the following costs (detailed in the attached Affidavits, Exs. 2 and 6):  Callison Tighe: $400.00 (*see* Shutt Aff. ¶ 30 & Att. 1); and, Lambda Legal: $1,026.48 (*see* Littrell Aff. ¶ 4 & Att. A.)  The total out-of-pocket expenses requested is $1,426.48.

## <u>CONCLUSION</u>

Plaintiffs are the prevailing parties in this litigation and as such are entitled to their attorneys' fees and costs.  The attorneys' fees sought here are reasonable and not excessive.  They are consistent with those rates normally charged by Plaintiffs' attorneys to their fee-paying clients for the type of work in question, and they are within the prevailing market rate charged by attorneys of comparable experience and expertise.  Likewise, the expenses and costs sought here are due to be recovered as they were necessarily incurred during the course of the lawsuit as out-of-pocket expenses, and are of the same type as those ordinarily charged to clients by counsel.

Accordingly, for the reasons set forth above, this Court should award Plaintiffs the attorneys' fees, litigation expenses, and costs as requested as well as post-judgment interest.

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

s/ Elizabeth L. Littrell
Elizabeth L. Littrell (GA Bar No. 454949)
730 Peachtree Street, NE, Suite 1070
Atlanta, Georgia 30308
Phone: (404) 897-1880
Fax: (404) 897-1884
blittrell@lambdalegal.org

*Admitted Pro Hac Vice*

SOUTH CAROLINA EQUALITY
COALITION, INC.

s/ Nekki Shutt
M. Malissa Burnette (Fed. I.D. No.:1616)
Nekki Shutt (Fed. I.D. No.: 6530)
CALLISON TIGHE & ROBINSON, LLC
1812 Lincoln Street
Post Office Box 1390
Columbia, South Carolina 29202
Telephone: 803-404-6900
Facsimile: 803-404-6901
mmburnette@callisontighe.com
nekkishutt@callisontighe.com

Victoria L. Eslinger (Fed. I.D. No.:738)
NEXSEN PRUET, LLC
P.O. Drawer 2426
Columbia, South Carolina 29202-2426
Telephone:  803-253-8249
Facsimile:  803-253-8228
veslinger@nexsenpruet.com

December 10, 2014                **ATTORNEYS FOR PLAINTIFFS**