IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Colleen Therese Condon and Anne Nichols Bleckley, | ) ) ) | C.A. No.  2:14-cv-04010-RMG |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| Alan M. Wilson, in his official Capacity as Attorney General; and Irvin G. Condon in his official capacity as Probate Judge of Charleston County, | ) ) ) ) ) | RETURN IN OPPOSITION TO PETITION FOR ATTORNEYS FEES |
| Defendants. | ) ) ) | |

No attorney's fees should be awarded in this case because Plaintiffs' counsel has merely ridden the coattails of the huge amount of legal work already done on the issue of same-sex marriage.[1]  One need look no further for evidence that the "wheel" has not been "reinvented" than to examine the order of this Court granting the permanent injunction.  *See* Order at 12 (enumerating cases, including *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) which have struck down bans on same-sex marriage).  We strongly disagree with all these rulings and believe the Supreme Court will ultimately resolve the matter.  However, the fact that these many cases exist in virtually every circuit, and that the legal theories upon which they are based are virtually the same, cannot be ignored in Plaintffs' request for fees.  Indeed, the legal theories upon which many of these challenges are founded were set forth by commentators over twenty years ago. *See Eskridge, William N., A History of Same Sex Marriage*, 79 Va. L. Rev. 1419, 1423-27 (1993) (summarizing legal arguments against same-sex marriage and stating "refusal to recognize same-

---

[1] We anticipate refiling our Motion to Deny or Defer Attorney's Fees next week.

sex marriage violates the right to marry, which the Supreme Court inferred from the Due Process Clause in *Loving v. Virginia*").

As the Second Circuit has concluded, an action "which merely aped the model" of earlier cases, justifies the denial of a fee award.  <u>See Gerena-Valentin v. Koch</u>, 739 F.2d 755, 759 (2nd Cir. 1984).  Thus, the inordinately high request for fees by Plaintiffs' counsel, with these many authorities in hand, cannot be justified.  The request "shocks the conscience" and should be denied.

"[A] district court may, in its discretion, deny a request for attorneys' fees <u>in its entirety</u> when the request, submitted pursuant to 42 U.S.C. § 1988, is so outrageously excessive it 'shock[s] the conscience of the court.'" (emphasis added) *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 96 (4th Cir. 1993), citing *Sun Pub. Co. v. Mecklenburg News*, *Inc.*, 823 F.2d 818, 819 (4th Cir. 1987), (a request for attorneys' fees, which is so exorbitant as to shock the conscience of the court, may be denied . . . .); *Plunkett v. Stephens*, No. C.A. 3:93-0304-19, 1997 WL 907958, at *1 (D.S.C. Dec. 18, 1997)(denying fee request in its entirety quoting *Landow* and *Sun Publishing*).  Plaintiff's Petition is just such an "outrageously excessive," shocking request for nearly $153,000 in attorney's fees for nearly 400 hours of work by three attorneys (Burnette, Shutt and Littrell, Petition p. 22), almost 50 hours of work by four additional attorneys (Petition p. 22) and nearly 30 hours of paralegal time (*Id.*).

This case was decided on cross-motions just 28 days after filing based upon existing precedent of the Court of Appeals for the Fourth Circuit. (Complaint filed October 15, 2014 and Order, November 12.  In fact Plaintiffs stated to this Court one week after filing this case that "[t]he legal issue is now completely settled in this jurisdiction" and chastised the Defendants Governor and Attorney General for not following precedent in *Bostic v. Schaefer*.  However, at

that time , they had already racked up nearly 200 hours of time on this case with over 200 more to go.[2]  According to their view of the case, all Plaintiffs needed to do was cite *Bostic* to the Court yet they claim it took them nearly 500 hours to do work on this case.  As discussed below, Plaintiffs cannot ride the coattails of *Bostic* while running up huge fees in the process.

In the context of fee-shifting provisions, such as those in 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964, "the Supreme Court has recognized that although a prevailing party 'should ordinarily recover an attorney's fee,' 'special circumstances' can render 'such an award unjust.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).  *Doe v. Bd. of Educ. of Baltimore Cnty.,* 165 F.3d 260, 264 (4th Cir. 1998).  Such special circumstances are present here in the grossly excessive hours and for the other reasons noted below.

Plaintiffs cannot "have it both ways" in this suit.  They cannot claim that it is governed by settled law, and then try to bill for nearly 500 hours of work during the brief life of this case arguing that *Bostic* controls.  They cannot tout the expertise of their legal counsel in same-sex marriage cases around the country including *Bostic*, and then bill nearly 200 hours writing documents emphasizing that decision.  (Plaintiff's counsel Nevins had been an attorney of record in *Bostic* and both he and counsel Littrell and Davidson had worked on other same-sex marriage cases in other jurisdictions.  Petition, pp. 10 – 12. )  Their fee petition should be denied in its entirety for the reasons discussed below.

---

[2] Through October 22: 117.85 hours  for Burnette and Shutt's firm Shutt Affidavit, ECF Document No. 46-3, pp. 10-13; 60.7 Littrell, ECF Doc. No. 46-7, p.7 ; 18.5 Nevins, ECF Doc. No. 46-6, p. 8; 2.6 hours Davidson, ECF Doc. No. 46-4, p. 7; 1 Taylor, ECF Doc. No. 46-5, p. 7.

# I

## PLAINTIFFS WILL NOT BE PREVAILING PARTIES
## IF THE ATTORNEY GENERAL PREVAILS ON APPEAL

Now that the the United States Supreme Court has granted the Petitions for Certiorari from the Sixth Circuit Court of Appeals,[3] if it upholds bans on same-sex marriage, Plaintiffs will no longer be prevailing parties. *Citizens for Equal Protection et al. v. Bruning*, 455 F.3d 859, 871 (8th Cir. 2006) ("Given our decision on the merits [sustaining same-sex marriage ban under equal protection clause], [Plaintiffs] are no longer "prevailing parties."); *Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers & its Lodge W-260*, No. 13-CV-10798, 2014 WL 5847602, at *4 (E.D. Mich. Nov. 12, 2014) ("if [the appealing party] prevails on appeal, [the moving party] would not be entitled to attorney fees."); *see also*, *Derringer v. Sewell*, 2009 WL 2424662, at * 1 (D.Ariz. Aug.7, 2009) (denying motion for attorney fees without prejudice pending appeal because of interest in judicial economy); *Ewing v. TWA Rest. Group, Inc*., 2009 WL 976490, at *1 (D.Kan. Apr.10, 2009) (same; *Quigley v. Gov't Emps. Ins. Co*., 2008 WL 384561, at *1 (M.D.Fla. Feb.11, 2008) (same)." *Id.*  Therefore, respectfully, and consistent with his Motion to Deny or Defer Attorney's fees which this Court denied without prejudice (Text Order, January 5, 2015, ECF Doc. 51), the Attorney General asks that this Court defer a ruling on attorneys fees or deny them altogether until the Supreme Court rules on the merits of the *DeBoer* petitions.

---

[3] *DeBoer v. Snyder*,772 F23d 388 (6th Cir. 2014)(Docket No's 14-556, 14-562, 14-571, 14-574).

## II

## THE FEES CLAIMED SHOCK THE CONSCIENCE
## AND NO AWARD SHOULD BE MADE

"The Fourth Circuit has recognized discretion in the district courts to deny a fee request in its entirety in civil rights litigation when the amount requested is so excessive it shocks the conscience of the court." *Fair Hous. Council v. Landow*, 999 F.2d at 97, *supra*. The amount here is "so outrageously excessive so as to shock the conscience of the court and, therefore, a complete denial of any fee award is justified." *Id*. 999 F2d at 94; *see also*, *Sun Publishing, supra*.

From Plaintiff's perspective, as noted above, the Courts had already "completely settled in this jurisdiction" the controlling legal issue in this case, the constitutionality of same-sex marriage bans. Plaintiff's Motion for Preliminary Injunction, ECF Doc. No. 12, p. 2. In fact, Plaintiffs proclaimed this state of the law in their Complaint which stated, at the outset, that this case was controlled by "unequivocal and binding Fourth Circuit authority," Complaint at p. 1, ECF Docket No. 1. Accordingly, attorneys' time on this case should have been limited, but instead it was inordinately high even though they were riding the coattails of *Bostic*. For these reasons, as more fully discussed below, fees should be denied in their entirety.

## A

## FEES SHOULD BE DENIED BECAUSE THEY ARE PATENTLY UNREASONABLE
## SINCE PLAINTIFFS MERELY RODE THE COATTAILS OF *BOSTIC*

The award of any significant attorney's fees to Plaintiff's attorneys in this case is without any legal foundation. This case was initiated after a similar action brought in this District had been pending for many months. This action was filed following the Fourth Circuit's decision in

*Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014). *Bostic* had already resolved the question at issue here – the constitutionality of a ban upon same-sex marriage. While defendant Wilson argued that *Bostic* was wrongly decided (and still does), and that longstanding principles of federalism governed, this Court quickly rejected our legal arguments. This case is now on appeal to the Fourth Circuit.

This Court put the case on an incredibly fast track, and granted a permanent injunction, 28 days after the case was filed, based primarily upon the fact that the Court was bound to follow *Bostic.* Indeed, the Court denied the defendant a short extension to demonstrate, as it had ordered, why *Bostic* was not binding upon it and to respond to Plaintiffs' Motion for Preliminary Injunction. Thus, the attorney's fees requested in this case and the hours billed are excessive and exorbitant and should be significantly reduced or denied altogether.

As Judge Seymour recognized in *Doe v. Kidd*, 2014 WL 1319177 (D.S.C. 2014), pursuant to 42 U.S.C. § 1988(b), a "reasonable attorneys' fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (citing *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986); (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *see also*, *Farrar v. Hobby*, 506 U.S. 103, 115 (1992), (quoting *Riverside v. Rivera*, 477 U.S. 561, 58 (1986); S. Rep. No. 94-1011, p. 6 (1976), *U.S. Cong. & Adm. News*, 1976 pp. 5908, 5913)). A court has broad discretion to "trim the fat" in an application for fees, and to eliminate excessive and duplicative hours. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2nd Cir. 1988). Pursuant to 42 U.S.C. § 1988, a claim for attorneys fees "may not be subverted into a ruse for producing 'windfalls' for attorneys." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). While a plaintiff may win a "technical" victory so as to make him or her the "prevailing party," such a victory "does bear upon the propriety of fees awarded under § 1988." *Farrar*, 506 U.S. at

6

114. "In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Id.* at 115.

Applying these principles to determine what fees are "reasonable," courts have determined that those riding the coattails of other cases demand a significant reduction in attorney's fees. For example, in *Disabled Patriots of America v. Genesis Dreamplex*, 2006 WL 2404140 (N.D. Ohio 2006), the Court imposed a 30% reduction on a motion for attorney's fees because it "closely duplicate[d]" documents filed in other cases. *See*, *Id.* at *4-5. In short, reliance upon "boilerplate" pleadings or motions or those "borrowed" from other cases requires a huge reduction in fees. *In Citizens For Community Values, Inc. v. Upper Arlington Public Library Bd. of Trustees*, 2010 WL 1253892 (S.D. Ohio 2010), the Court stated:

> [i]t is apparent that Plaintiff's counsel here borrowed liberally from the Motion for Preliminary Injunction filed in <u>Faith Center</u> when drafting the Memorandum in Support of Plaintiff's Motion for Preliminary Injunction filed in this case. The legal arguments are nearly identical and Plaintiff relies on the same case law and direct quotations from this case law in each pleading.

*Id.* at *3. The Court noted that there were some differences in the two cases and thus did not reduce the fees in as large a percentage as requested. Nevertheless, the hours billed was deemed "duplicative and excessive." *Id.* at *4.

The Second Circuit, in *Gerena-Valentin v. Koch*, 739 F.2d 755 (2d Cir. 1984) addressed a situation, involving the Voting Rights Act, where the Court upheld the District Court's conclusion that the award of significant attorney's fees was inappropriate because such would constitute a windfall to counsel based upon previous litigation. There, the Court stated:

> [i]n the instant controversy, an injunction did issue against the City's redistricting plan and the plan was substantially modified. Judge Duffy, however, concluded in effect that Gerena-Valentin's efforts were not catalytic or a substantial factor behind these favorable results. The judge found as a fact that Gerena-Valentin's complaint "merely aped the model provided [weeks earlier] by <u>Herron</u> and <u>Andrews</u>." . . . .

7

> We cannot say that Judge Duffy's decision was clearly erroneous. . . .   While there is no first-in-time rule governing the award of counsel fees where multiple litigation is brought, a duplicative action which contributes virtually nothing to the ultimate result cannot justify an award of counsel fees.  The purpose of such awards is to "encourage the redress of civil rights violations." <u>Cooper v. City of South Bend</u>, 635 F.2d 652, 655 (7th Cir. 1980).  Where that goal is fully achieved by a single well-managed action, an award of compensation to late-comers who add nothing of value would encourage the bringing of superfluous litigation solely for an award of fees.

*Gerena-Valentin*, 739 F.2d at 759.

We recognize that the attorneys in this case are highly professional, competent lawyers. But that is not the point.  The history of this litigation, however, strongly militates against the award of significant attorney's fees even more so than the situation in the Second Circuit decision of *Gerena-Valentin.*  At the time this action was filed, a similar action (*Bradacs*) was already pending in this District.  There also existed a decision from the Fourth Circuit (*Bostic*) which virtually foreordained the result in this case.  As this Court stated in its order granting a permanent injunction in this case, "[i]t is axiomatic that a decision of a circuit court, not overruled by the United States Supreme Court, is controlling precedent for the district courts within the circuit." *Order* at 13-14.

Of course, we strongly disagree with the *Bostic* decision, believe it is distinguishable from the case here, and have appealed this Court's decision based upon it.  Moreover, the State will weigh in on the constitutional issue before the Supreme Court when the Court takes up the Sixth Circuit cases.

That is because the Attorney General is required under the Constitution, statutes, and common law, as well as his oath, to defend the laws of the State, including its Constitution.  This Court recognized this duty when it concluded, in denying 11th Amendment immunity to the Attorney General that "Defendant Wilson has a duty as the state's chief prosecutor and attorney

to enforce the laws of the State." Op. at 6. It would shirk this constitutional duty for the Attorney General to do otherwise.

In this regard, the Supreme Court has recently concluded that persons other than state officials possess no standing to defend the State's laws. As the Court stated in *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2668 (2013), a case challenging California's ban on same-sex marriage, "[w]e have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to. We decline to do so for the first time here." Thus, if South Carolina's Attorney General does not fulfill his oath and duty to seek to uphold South Carolina's Constitution in this case, such provision would receive no defense at all.

Fees may not be awarded under § 1988 for the purpose of punishing the defendant. Here, in essence, the Plaintiff seeks to use the fee award as the means to punish the State of South Carolina not only for placing into the Constitution the definition of marriage which has existed for centuries, but for the Attorney General carrying out his duty and oath to uphold the State Constitution in that regard. The Seventh Circuit, in *Simpson v. Sheahan*, 104 F.3d 998, 1003 (7th Cir. 1997), rejected the use of attorneys fees as a punitive measure:

> [i]n light of Congress' purpose in enacting § 1988, it is clear that an award of attorneys fees is not to punish defendants. . . . In essence, the district court used attorney's fees in this case as an alternative to, or substitute for, punitive damages (which were not available). The district court cannot do indirectly what it is prohibited from doing directly.

*See also*, *Kerr v. Branch Banking & Trust Co.*, 2011 WL 1131314 (D.S.C. 2011 at *3) (attorneys fees "is not intended to penalize defendants. . . .").

Thus, the Attorney General and the State should not be penalized and punished by the award of excessively higher attorneys fees for defending a provision which the citizens of the State adopted by almost 80% of the voters. The State's defense of federalism was rejected by the

Court, noting that the Fourth Circuit in *Bostic* "rejected Virginia's claim that principles of federalism required a different outcome." Order at 16. While we respectfully disagree with the District Court's assessment, nevertheless, our defenses in this action did not in any way delay this case nor require any significant legal work by Plaintiff's attorneys.

Accordingly, any award of fees, such as is being sought here, would result in a tremendous windfall to the attorneys in this case for the very same reasons recognized by the Second Circuit in *Gerena-Valentin*. Here, the great bulk of the legal work was done by the attorneys in the *Bostic* case. Any significant award of fees would constitute a windfall to the attorneys for the Plaintiff.

## B

## FEES SHOULD BE DENIED ENTIRELY BECAUSE OF THE EXCESSIVE TIME CLAIMED

At the outset, we must note that assessing individual entries is difficult on many of the entries on Ms. Shutt's affidavit, because they group multiple, independent tasks into one total. For example, the entry of Ms. Burnette on October 15, 2014 for 10.20 hours included the following:

> Review draft of Complaint to finalize; conference with J. Ayers; travel to Charleston (round trip); numerous telephone calls with Condon, Ayers and NS to make final preparations for lawsuit; meeting with clients Condon and Bleckley; prepare emails to co-counsel to arrange strategy session

ECF Doc. 46-3, p. 11. Her entry for October 23 for 12.5 hours included the following:

> Receive several Text Orders from the Court; consult with co-counsel about upcoming filings, responses and teleconference with Court; conduct legal research for Motion to Expedite and Motion to Alter Time; revise and finalize Motions, circulate among co-counsel; consult with Attorney E. Smith on Motions: consult with attorney John Nichols on Motions, supervise filing of Motions

ECF Doc. 46-3, p. 13.   Although all fees should be denied, if *arguendo*, this Court were to consider any fees, Plaintiffs should explain and justify the components of such groupings in order to assess the time claimed or they should be disallowed.   *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 477 (S.D.N.Y.) aff'd, 887 F.2d 408 (2d Cir. 1989) (There are . . . numerous entries that are, in fact, too vague . . . even when taken in context. While not approaching the 50% figure asserted by the NFL, the Court cannot ascertain whether such entries are properly recoverable or not. Fees cannot, therefore, be properly awarded for those entries.")

Nevertheless, regardless of the breakdown of these components, the total hours claimed are way above the time needed to argue "binding Fourth Circuit Authority."   Some of the many excesses are discussed below as best can be determined from the time sheets.

## 1

## Inordinate time in drafting

Plaintiffs' primary filings in this case, other than their Petition for Attorney's Fees and their filing in response consist of the following with drafting times noted

1.  A 15 page Complaint

    A.  21.25 hrs (Shutt affidavit, ECF Doc. 46-3, pp. 10 & 11)

    B.  6.7 hrs (Littrell affidavit, ECF Doc. 46-7, p. 7)

    C.  11.1 hrs (Nevins affidavit, (ECF Doc. 46-6, p. 8)

    D.  2.1  hrs. (Davidson affidavit (ECF Doc. 46-4, p. 7)

    Total  51.5 hours

2.  A 21 page Motion for Preliminary Injunction with attachments

   A.  3.95 hrs. (Shutt affidavit, ECF Doc. 46-3, pp. 11 & 12)(half of undifferentiated grouped time for SJ and PI Motions)

   B. 20.1 hrs (hrs (Littrell affidavit, ECF Doc. 46-7, p. 7) – note time includes half of Undifferentiated 6.4 hrs for revisions to SJ and  PI motions)

   C.  3.8 hrs (Nevins affidavit, (ECF Doc. 46-6, p. 8)

   D.  .5  hrs (Taylor affidavit, ECF Doc. 46-5, p. 7 – half of undifferentiated time for SJ and PI motions)

   Total: 28.35 hrs.

3.  15 page Reply to the Defendants' Return to their PI Motion

   A. 26.5 (Shutt affidavit, ECF Doc. 46-3, pp. 15 & 16)

   B.  28.7 hrs (Littrell affidavit, ECF Doc. 46-7, p. 7)

   C.  9.1 hrs. (Nevins affidavit, (ECF Doc. 46-6, p. 8)

   Total: 64.3 hrs.

4.  16 page Memorandum in Support of Motion for Summary Judgment with two page motion and attachments

   A.  3.95 hrs. (Shutt affidavit, ECF Doc. 46-3, pp. 11 & 12)(half of undifferentiated grouped time for SJ and PI Motions)

   B.  16.7 hrs hrs (Littrell affidavit, ECF Doc. 46-7, p. 7 – notes includes half of undifferentiated  6.4 hrs for revisions to SJ and PI motions

   D.  .5  hrs (Taylor affidavit, ECF Doc. 46-5, p. 7 – half of undifferentiated time for SJ and PI motions)

   Total:21.15 hrs.

5.   13 page memorandum in opposition to Motion for Emergency Stay at the Court of

Appeals.  ECF Document 11, Appeal No. 14-2241.

A.  7.6 hrs (Shutt affidavit, ECF Doc. 46-3, p. 17)

B.  17.5 hrs (Littrell affidavit, ECF Doc. 46-7, p. 7)

Total: 25.1 hrs.

The approximately 190 hours billed for this work are exorbitant and patently unreasonable.  All of these filings heavily emphasized the *Bostic* decision and, therefore, necessitated little original work  They were all written with the assistance of experienced legal counsel, and could have included much "cut and paste" work.  Instead, multiple counsel worked on most of these documents even though one would have been sufficient.  Although Plaintiffs refer to the Attorney General's Return to their PI motion as "voluminous," their Reply was only 15 pages long as noted above and took them nearly 65 hours to write with the assistance of three lawyers.

**2**

**Billing for other cases**

Plaintiffs cannot recover for the approximately 39.4 hours of time spent advising clients prior to and for the purposes of the *State v. Condon* case.  *State ex rel. Wilson v. Condon*, 410 S.C. 331, 333, 764 S.E.2d 247, 248 (2014).  That case held that Defendant Irvin Condon and other "probate judges are hereby directed not to issue marriage licenses to same-sex couples pending a decision by the Federal District Court in *Bradacs* [*v. Haley*, 3:13–CV–02351–JMC]."  Plaintiffs intervened in that case, but they did not raise a 42 U.S.C. § 1983 claim.  Following Judge Childs' ruling in *Bradacs v. Haley*, No. 3:13-CV-02351-JMC, 2014 WL 6473727 (D.S.C. Nov. 18, 2014) the Supreme Court lifted the injunction it had earlier imposed.  Therefore, that

Supreme Court action was independent of the instant case, and the lifting of the injunction in that case was a result of a decision in a different case, *Bradacs*, that was pending when Plaintiffs' brought the instant suit.  Had they not filed this suit, they would have achieved the relief they wanted from *Bradacs* and the Supreme Court.

Plaintiffs cannot claim fees in the instant case for work done prior to and in connection with *State v. Condon. Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 255 (5th Cir. 2000)("Simi brought its initial suit in state court and did not allege a § 1983 violation. Without a demonstration that this state suit was part of the enforcement of the § 1983 claim, legal fees relating to that litigation cannot be recovered under § 1988.").  Accordingly, the approximately 39.4 hours claimed for this work (including 16.6 hours of work by Ms. Shutt on October 8), should be entirely disallowed.   Shutt affidavit, ECF Doc. No. 46-3, p. 10.

**3**

**Miscellaneous Charges**

Numerous other time claims are unnecessary or excessive and include, but are not limited to the following:

1. 2.5 hours related to the 15 minute long telephonic status conference in this case.

   Shutt affidavit, 10.24.14, MMB entry, ECF Doc. 46-3, p. 14 (Review email from V. Eslinger about Motion to Expedite; confer with NS prior to status conference; represent clients at Status Conference before Hon. RMG (speaking on behalf of all plaintiffs' counsel); Court took Motion to Expedite under advisement, denied Motion to Amend Time; denied AG's request to extend time for response, and issued other directives").

   Litttrell affidavit, ECF Doc. 46-7, p. 8.

2. 11.2 hours of  review, consultation and communication  related to this Court's Order of November 12, 2014.  (Shutt affidavit, , ECF Doc. 46-3, p. 14)

3. 4.7 hours for the following matters including the *Bradacs* decision which was independent of this action and on which Plaintiffs' demonstrated an unwillingness to wait although the State Supreme Court relied on that case.

   *Received 4th Circuit Order denying stay; communicate with clients &co-counsel about same; telephone call to opposing counsel (Attorney
   Smith) about plan for any further Motion, Consent to Extension or Petition
   for Attorneys Fees, etc.; review Bradac's rulings and summarize for clients;
   receipt and review email from opposing counsel with Motion for Stay to
   Supreme Court of the United States (SCOTUS).  (Shutt affidavit, 11.18.14, NAS
   entry, ECF Doc. 46-3, p. 19)

4. 16.6  hours for drafting response to Application of Attorney General to the United States Supreme Court for Stay although no return had been requested by that Court and Plaintiffs filed none.

   Littrell, affidavit, ECF Doc. 46-7, p. 8; Davidson Affidavit, ECF Doc. 46-4, p. 7.

5. 5.9 hours for organizing responses to other same-sex couples seeking marriage licenses when they were not parties to this case.    Shutt Affidavit, ECF Doc. 46-3, p. 10, entries 11.19.14

6. 8 hours for Ms. Littrell to travel to South Carolina to meet with her clients.  Affidavit, ECF 46-7, p. 7.  With three attorneys and a paralegal working in South Carolina, her trip to our State was completely unnecessary.  These hours should be disallowed.

## 4

## The Totality of the Hours

The above noted excessive hours do not include all of the nearly 500 hours that Plaintiffs

billed for this case.  This amount of time is patently exorbitant.  In *Planned Parenthood v. Rose*,

2:01-cv-03571, (D.S.C. June 9, 2005) (Attachment A), The Honorable Patrick Duffy awarded

fees of $154,505 for 440.15 hours of work, very similar to the amount of money and time

claimed in the instant case, but in *Rose*, the attorneys did much more work.  Following oral

argument and a decision on cross-motions for summary judgment, *Rose* case was appealed to the

Court of Appeals where oral argument was held, rehearing en banc was sought and denied with

concurring and dissenting opinions and a petition for certiorari was filed at the United States

Supreme Court. *Planned Parenthood Of S. Carolina Inc. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004); *reh. denied*, 373 F.3d 580 (4th Cir. 2004); *cert denied*, 543 U.S. 1119 (2005).  During the brief life of the instant case, not one argument or hearing was held other than a telephone status conference, and the Plaintiffs have not had to file one substantive document on appeal other than a response to the Attorney General's Motion for Stay.  *Planned Parenthood* demonstrates the exorbitance of the instant Plaintiffs hours.

The foregoing analysis demonstrates that the fees claimed in this case are so inordinately high that they are shocking to the conscience of the Court and should be denied in their entirety.

## III

### NO ATTORNEYS AWARD MAY BE MADE AGAINST THE ATTORNEY GENERAL BECAUSE STATE LAW DOES NOT APPROPRIATE FUNDS OR AUTHORIZE THE USE OF PUBLIC MONIES FOR THAT PURPOSE BY HIM

The Attorney General is not given the authority to pay attorney's fees for the defense of State statutes. *See*, S.C. Code Ann. §1-7-10.  Moneys may be obtained from the State Treasury only upon warrants issued by the Comptroller General and those officials are not named in this action. S.C. Code Ann. §§11-3-130, 11-3-140, 11-3-170, 11-3-185.  The Attorney General's Office has absolutely no authority to write checks except for petty cash matters, and it has no appropriations for attorney's fees. *Id*.; Act 286, Part IA, §59, 2014 S.C. Acts ___ (Appropriations Act).  Therefore, money cannot be paid out by the Attorney General for attorney's fees because money cannot be drawn from State Treasuries unless an appropriation is made for that purpose. Art. X § 8, S.C. Const.  For these reasons, no award may be made against the Defendant Attorney General.  Although, as discussed *infra*, an award could be made against the State of

South Carolina as an entity, rather than the Defendant Attorney General,  Plaintiffs are not

entitled to any award for reasons discussed above.

<div align="center">IV</div>

### EVEN IF, ARGUENDO, FEES ARE NOT DENIED IN THEIR ENTIRETY, THEY SHOULD BE SUBSTANTIALLY REDUCED

Normally, a fee award is analyzed by calculating and adjusting, if appropriate, a lodestar

figure as described below:

> "The proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir.2013), as amended (Jan. 23, 2014). First, the "court must 'determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.' " *Id.* (quoting Robinson v. Equifax Info. Servs. LLC, 560 F.3d 235, 243–44 (4th Cir.2009)). A court should "exclude from this initial fee calculation hours that were not 'reasonably expended' " on the litigation. *Hensley v. Ec*kerhart, 461 U.S. 424, 434,(1983). *2 There is a strong presumption of the reasonableness of the lodestar amount. *Perdue v. Kenny A*., 559 U.S. 542 (2010). However, after calculating the lodestar, a district court may adjust the amount of attorney's fees based on "the relative weights of the twelve factors set forth in *Johnson* [." *Id.*[note 3 in original] After determining the lodestar figure, the court should "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee,* 738 F.3d at 88. Finally, the court should "then award[ ] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*

---

[4]    [footnote 3 in original]  The reasonable hours and rate are determined by applying the following twelve factors first noted in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974):(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required to properly perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) fee awards in similar cases.  *Barber v. Kimbrell's Inc*., 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

*Shelley v. Tribble*, 2014 WL 6460552, at *2.

*Shelley v. Tribble*, No. CA 3:11-3477-CMC, 2014 WL 6460552, at *1-2 (D.S.C. Nov. 17, 2014)

A request for attorneys' fees which is so exorbitant as to shock the conscience of the court may be denied without an analysis of the *Johnson/Barber* factors (*Fair Housing v. Ludlow* and *Plunkett, supra*). This request should be denied for that reason; however, if *arguendo*, this Court rules differently, the fees should still be substantially reduced due to the excessive time in this case. *Hensley v. Eckerhart*, 461 U.S. at 434 ("The district court should exclude from [the] initial fee calculation hours that were not "reasonably expended." (citing S.Rep. No. 94–1011, p. 6 (1976)).

The hours claimed are grossly excessive given the case's brief life, the applicability of recent precedent Plaintiffs deemed controlling, and the assistance of experienced counsel. Instead, multiple lawyers spent hours researching and drafting documents that *from Plaintiffs' perspective* should have been largely "cut and paste" tasks. *Johnson* factors 1, 2, and 3, note 3, *supra*. The time should be cut at least by 70% or more given this excessive and duplicative effort. *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 266-67 (S.D.N.Y. 1995)("The lodestar figure can then be increased or reduced depending on subjective factors such as the level of complexity of the issues involved, the skill of the attorneys involved, overstaffing and inflated hours.")(emphasis added).

Ample precedent exists for substantial reductions in the hours claimed. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 954 (1st Cir. 1984) is certainly pertinent here in the following conclusions:

> [S]pending 308 hours for a claimed $84,700 to produce a seventeen-page motion to affirm, a thirty-seven page response brief, and a two-page supplemental statement, and to prepare for oral argument would appear to be unreasonable for almost any case. When we consider, in addition, the particulars of this litigation,

the <u>excessive nature of Professor Tribe's claim becomes unmistakable.</u>  As indicated above, <u>most of what defendants presented in their briefs had been argued at earlier stages of the litigation, and lead counsel is an acknowledged authority in constitutional law, not a novice.</u>

(emphasis added).  *Id.*  Here, Plaintiffs claimed nearly 200 of their total hours on work on five documents based largely on the same *Bostic* case on which one of their attorneys had been counsel of record.  Their excess claims are "unmistakeable" as in *Grendel's Den.* That case cut the 308 hours at issue by one-third, but this Court should reduce Plaintiff's hours by more than that amount because they centered their arguments around the same arguments that they deemed controlling.  Courts have reduced awards for excessive time by greater amounts.  *See*, *e.g*, *Spell v. McDaniel*, 852 F.2d 762, 770 (4th Cir. 1988) (70% reduction in hours due to duplicative and inflated time); *Goodwin v. Metts*, 973 F.2d 378, 384 (4th Cir. 1992) (50 % for duplication of effort).  Given the grossly excessive amount of time Plaintiffs claim for their work on this case including inordinate drafting time and the work of multiple attorneys, their fees should be reduced by 70%  to $45,000  or less if not eliminated entirely.

<div align="center">

**V**

</div>

<div align="center">

**IF, ARGUENDO, AN AWARD IS MADE IT SHOULD ONLY BE MADE AGAINST THE STATE OF SOUTH CAROLINA AS AN ENTITY RATHER THAN THE DEFENDANT ATTORNEY GENERAL**

</div>

If, arguendo, any award is made in this case, it should be made against the State of South Carolina, as an entity, rather than the Attorney General who is not authorized under State law to expend monies for Attorney's fees or write checks for that purpose, as discussed, *supra*. Directly applicable here is United States District Judge Duffy's Order in *Southeast Booksellers Ass'n v. McMaster*, 2:02-cv-03747, (September 8, 2005) in which the Court ruled that fees should be assessed against the State of South Carolina rather than the Attorney General.  (Attachment B). His Order discussed *Herbst v. Ryan*, 90 F.3d 1300, 1306 (7th Cir. 1996) and concluded that

<div align="center">

19

</div>

"because Plaintiffs sued Defendants in their official capacities and because a state is liable for attorney's fees when a state official is sued in his official capacity, the court believes that an award of attorney's fees against the State of South Carolina as an entity is proper."[5]

*Herbst v. Ryan*, 90 F.3d 1300, 1306 held as follows:

> Because the officers were sued in their official capacities, the liability for attorneys' fees is not their personal liability but the liability of the governmental body of which they are officers. . . Liability can be imposed on a governmental entity, and on its officer in his official capacity, only when that governmental entity is the "moving force" behind the constitutional wrong that forms the basis of the suit. *Kentucky v. Graham*, 473 U.S. 159, 166 . . .(1985); *Polk County v. Dodson*, 454 U.S. 312, 326 . . . (1981). Here, the Attorney General of the State and the State Director of Public Health clearly undertook the defense of the challenged amendments on behalf of the state.[footnote omitted] The State's Attorneys also undertook the defense of the constitutionality of this state statute and the state policy that it embodied. It is clear that the State's Attorneys, when bringing an action under the criminal laws of the State of Illinois, also are operating as officers of the state. *Ingemunson v. Hedges*, 133 Ill.2d 364, 140 Ill.Dec. 397, 399-400, 549 N.E.2d 1269, 1271-72 (1990). In short, the undertaking was a defense of a state policy by state officers on behalf of the state <u>The district court certainly committed no abuse of discretion in determining that the "moving force" behind the statute at issue here was the State of Illinois.</u>

> In determining that the State of Illinois ought to bear the responsibility for the fee award, the district court certainly in no way impaired the purposes of §1988 [Footnote omitted] or the concerns of federalism. As the First Circuit noted in Venuti, "the practical difficulties that would accompany any requirement that courts trace the cost dollar back to the most appropriate 'tax pot' suggest that Congress had no such legal rule in mind." 702 F.2d at 8. Illinois may allocate among its subdivisions fiscal responsibility for the defense and enforcement of its laws as it sees fit. The district court, charged with the responsibility of effectuating the purpose of §1988 without conducting a "second major litigation," *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941, committed no abuse of discretion in fixing responsibility on the political entity whose policy was the "moving force" in the litigation and whose officers appeared before it in defense of that statutory policy.

(emphasis added).

---

[5] District Judge Currie awarded fees against the named Defendants rather than the State in *Summers v. Adams*, No. C/A 3:08-2265-CMC, 2010 WL 2179571, at *7 (D.S.C. May 26, 2010). We submit that Judge Duffy's ruling represents the better view.

In the instant case, the Defendant Attorney General was simply defending State statutes passed by the General Assembly and a Constitutional amendment ratified by that body. Pursuant to state statutory law, the Attorney General is required to defend the constitutionality of state statutes if at all feasible. *See*, S.C. Code Ann. §§ 1-7-40 and 1-7-50. Those laws were entitled to that defense, federal Courts of Appeals are still divided on the merits of the Constitutional question, and the United States Supreme Court has not yet ruled on the merits of the issue. Although the Plaintiffs will probably point to the Attorney General's Petition to the State Supreme Court in *State v. Condon*, *supra*, the Attorney General took appropriate action to defend the statutes and referenced the pending *Bradacs* same-sex marriage case. That Court agreed with his actions. Because the Attorney General was acting well within his duty to defend state law under these circumstances, any fees should be assessed only against the State of South Carolina.

## CONCLUSION

In summary, Plaintiffs' request for attorney's fees in this case is nothing short of outrageous. From start to finish, this is a case which lasted a mere 28 days, and one in which the Attorney General was chided for not "throwing in the towel," even though it is his constitutional duty to defend the laws of the State. It is a case in which Plaintiffs relied upon a recycled legal theory and a preexisting Fourth Circuit decision, which was supported by an inapplicable racial case from the 1960's, to justify more than $150,000 in fees. In short, Plaintiffs base their claim as a prevailing party on a borrowed constitutional theory about to be tested in the United States Supreme Court in an entirely different case from another circuit. The purpose of the Attorney's Fees Statute in civil rights claims is to make "it possible for persons without means to bring suits to vindicate their rights," not to provide "unjustified enhancements that serve only to enrich

21

attorneys . . . ." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2012).  Plaintiffs' attorneys

should not be so enriched here and their claims should be denied.[6]

<div style="margin-left:40%">

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: BCOOK@SCAG.GOV

/s/ J. Emory Smith, Jr.
J. EMORY Smith, Jr.
Deputy Solicitor General
Federal ID No. 3908
Email: ESMITH@SCAG.GOV

IAN P. WESCHLER
Assistant Attorney General
Federal ID No. 11744

BRENDAN J. MCDONALD
Assistant Attorney General
Federal ID No. 10659

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone:  (803) 734-3680
Fax:  (803) 734-3677

</div>

January 16, 2015                                   Counsel for the Attorney General

---

[6] As noted at the beginning of this Return, we anticipate re-filing our Motion to Deny or Defer
Attorney's Fees next week.